Ernest KEETON, Plaintiff-Appellant,

v.

**MAURY COUNTY HOSPITAL, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Nashville.

March 14, 1986.

Application for Permission to Appeal Denied by Supreme Court, May 27, 1986.

L. Bruce Peden, Columbia, for plaintiff-appellant.

W.A. Moody, Nashville, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff Ernest Keeton sued defendant Maury County Hospital pursuant to the Governmental Tort Liability Act for personal injuries allegedly caused by the negligence of the defendant. From a defendant's judgment in this nonjury case, plaintiff appeals.

The material facts which we briefly narrate are virtually undisputed. In April, 1982, the 79 year-old plaintiff was admitted to the Maury County Hospital suffering from a prostate condition. The hospital was advised that he had a balance problem or vertigo and would need help when he got out of bed. After undergoing prostate surgery on April 29, 1982, plaintiff was catheterized until May 2, 1982, when the catheter was removed by his physician at about 11 a.m. Defendant's employee, Nurse Marie Gilliam, was in charge of the area of the hospital in which plaintiff was located and was present when the catheter was removed. Plaintiff advised her of his vertigo condition and the necessity for assistance if he got out of bed. Nurse Gilliam specifically instructed plaintiff at that time to call for help when getting out of bed. Previously that morning a male orderly had similarly admonished plaintiff. Plaintiff was not furnished with a urinal and shortly after the removal of the catheter had the urge to urinate. Plaintiff utilized the call system seeking assistance to go to the bathroom and a nurse came to the door and advised him that an orderly would be sent to assist him. After a time when the orderly did not appear, plaintiff again called the nurses station and a nurse again appeared at the door and advised plaintiff that an orderly would be sent. This sequence of events was repeated about three or four times. Plaintiff testified that he called his son and advised him of his distress. Nurse Gilliam disputed the nature

of this call and testified that she in fact made the call for plaintiff to ask plaintiff's son to bring plaintiff's walker to the hospital for his use. Plaintiff's daughter-in-law testified that after plaintiff called their home on this occasion she called the hospital, but the switchboard operator refused to connect her to the nurses station since it was against hospital policy. The operator was then told of plaintiff's distress and the daughter-in-law was put on hold and eventually the telephone connection was cut off. In the meantime, after receiving no assistance despite his calls, plaintiff was in such distress that he felt he was about to wet the bed, so he got out of bed to go to the bathroom and on his return to bed he lost his balance, fell and broke his hip.

Plaintiff's physicians did not leave any orders with the hospital personnel restricting plaintiff from getting out of bed nor did the physicians order any type of restraint to prevent plaintiff from getting out of bed without assistance. Nurse Gilliam also testified that shortly after plaintiff fell, she asked him about the incident and he told her that after he went to the bathroom he decided to sit in the chair and, while so doing, bent over to put on a shoe and fell. However, the hospital record contains no such history, but to the contrary the event is recorded in the nurse's notes as:

> Pt. attempted to go to BR s̄ [without] asst., fell, result broken hip.

The trial court found that the defendant hospital was well aware of plaintiff's vertigo or dizzy condition and that plaintiff was admonished by hospital personnel not to try to get out of bed without assistance. Despite the warning, plaintiff attempted to go to the bathroom alone and fell while so doing. The trial court held, however, that in order to hold the hospital liable the proof must show that the hospital violated an order of the physician and must also show through expert testimony that the hospital violated the standard of care for hospitals in that area. The court then found no negligence on the part of the hospital, apparently concluding that the failure to prove a violation of a physician's order and to establish a deviation from the standard of care by expert testimony precluded a finding of negligence.

Plaintiff concedes, and we agree, that the trial court's findings of fact are correct but plaintiff contends that the court's ruling was predicated upon erroneous conclusions of law.

The first issue presented for review is: Did the trial court err in holding that in order to be liable it must be shown that the hospital staff violated orders left by the doctor who was treating the plaintiff?

The final judgment provides in part:

> \*   \*   \*   \*   \*   \*

> 4. In order to be liable, it must be shown that the hospital staff, violated orders left by the doctor, who was treating the plaintiff. There is no proof in this record that the doctor left any orders at all concerning the plaintiff getting out of bed.

Plaintiff asserts that this part of the judgment incorrectly states the law and that the judgment premised thereon is incorrect.

The general rule is that a hospital is required to exercise such reasonable care toward a patient as his known condition may require and the extent and character of this care depends upon the circumstances of each case. *Spivey v. St. Thomas Hospital,* 31 Tenn.App. 12, 211 S.W.2d 450 (1947). A hospital cannot evade duties it owes to a patient by proof that its employees followed the instructions of the patient's physician. *See Rural Education Ass'n v. Anderson,* 37 Tenn.App. 209, 261 S.W.2d 151 (1953). As Judge Nearn, speaking for the Western Section of this Court, said in *Stokes v. Leung,* 651 S.W.2d 704 (Tenn.App.1982):

> The prime responsibility to afford reasonably safe facilities and reasonable attendance to the patient's needs to prevent self injury lies with the hospital and not the physician. The physician is not

in constant attendance. The hospital is supposed to be.

*Id.* at 708.

■ Accordingly, under the facts of this case we hold that in order to predicate liability on the hospital it is not necessary to prove that hospital personnel violated an order left by plaintiff's physician.

The second issue presented for review is: Did the trial court err in holding that under the facts and circumstances of this case the plaintiff was required to present expert evidence as to the standard of care and the violation of such standard? We quote the pertinent part of the judgment:

\*   \*   \*   \*   \*   \*

5. Also, to recover the plaintiff must show that the hospital violated the standard of care for hospitals in this area, under similar circumstances as the facts of the case at bar. This type of evidence can only be shown by expert testimony. Although the plaintiff's Counsel tried desperately to show this through a hostile witness, Marie Gilliam, the Court does not find that there is any evidence of the Standard of care, or any violation of this standard of care. This Court does not find any wrong doing or negligence on the part of the hospital staff. A hospital is not an insuror to its patients. So long as the hospital staff does not violate the standard of care, they cannot be liable. The plaintiff's Complaint is therefore dismissed and the cost of the same is adjudged against the plaintiff.

The trial court found plaintiff was suffering from severe dizziness, he was told not to get out of bed without assistance and, despite the warning, plaintiff attempted to go to the bathroom alone and fell. The record substantiates these findings of fact. However, in addition to the facts found by the trial court, the record is undisputed that: Nurse Gilliam knew that after removal of a catheter there is difficulty in holding and controlling urination; plaintiff was not furnished with a urinal; hospital personnel failed to respond to plaintiff's call for assistance to go to the bathroom; and it was only after receiving no assistance that plaintiff went to the bathroom unassisted and fell. It is also undisputed that plaintiff's daughter-in-law called the hospital to aid plaintiff in getting assistance, but the hospital telephone operator did not or would not obtain the needed aid.

The defendant hospital contended in the trial court, and the trial court agreed, that even in the face of these facts there must be proof by an expert witness of the standard of care required of the hospital in caring for patients such as plaintiff and proof that a violation of the standard of care was the cause of the damages. The Medical Malpractice Review Board and Claims Act of 1975, T.C.A. § 29–26–101 et seq. (1980), made some sweeping changes in the law relating to medical malpractice in the state. However, the Act in part merely codified the existing common law, particularly the provisions of T.C.A. § 29–26–115 placing the burden of proof concerning standard of care, violation thereof, and proximate cause upon plaintiff. The Act did not purport to mandatorily require such proof in all cases of malpractice. Prior to the passage of the Act, malpractice actions involving negligence and proximate cause required expert testimony, unless the alleged malpractice was within the common knowledge of a layman. *Rural Educational Association v. Bush*, 42 Tenn. App. 34, 298 S.W.2d 761 (1956). After the Act's passage, our Supreme Court in *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn.1978), again held that where the alleged malpractice lies within the common knowledge of a layman, expert testimony is not required.

■ In the case before us it is clear that the hospital knew and could foresee that the plaintiff might sustain injury if he attempted to get up and go to the bathroom unassisted. Although defendant hospital does not rely upon contributory negligence, it contends that there was no negligence on the part of the hospital and that the sole negligence was on the part of plaintiff in getting up unassisted despite the warnings

to the contrary. Perhaps in some instances this argument might find a more sympathetic ear, but we must remember that in the case before us we have a lucid, mentally competent patient in great distress because of his need to urinate. The patient had not been furnished a urinal which would have alleviated the distress, and when the patient, complying with instructions, called for assistance to go to the bathroom, his requests were ignored. The discomfort and tension mounted. Although the patient was somewhat physically incapacitated, he was able to move about. Under these circumstances, we feel that the hospital could reasonably foresee that if it did not provide means to take care of the patient's physical demands, the patient would attempt to take care of them himself. The plaintiff's course of action in this case could have been reasonably expected from an average patient and should have been forseen by he hospital. We do not think that the testimony of any professional administrator, nurse, doctor or other expert witness is necessary to prove the basic facts of physical necessity shown in this record. The fact finder has the capacity to determine the issue of due care under the facts and circumstances of the case without the assistance of expert witnesses.

Therefore, we hold the trial court erred in its ruling that expert testimony was required to prove the standard of care of the hospital and a failure to abide by the standard of care.

The final issue for review is:

Did the Trial Court err in finding no negligence on the part of the defendant hospital.

■ It is apparent from the judgment of the trial court that the trial court's finding that there was no proof of wrong doing or negligence on the part of the hospital was premised on the erroneous interpretation of the law requiring expert testimony. The material facts of the case which we have heretofore outlined were not refuted by the hospital, were virtually undisputed and in our opinion constitute a failure on the part of the hospital to use reasonable and ordinary care under the circumstances which directly and proximately caused the injury to the plaintiff. The hospital did not exercise such reasonable care toward the plaintiff as his known condition required. *See Spivey v. St. Thomas Hospital*, 31 Tenn.App. 12, 211 S.W.2d 450 (1947). Since the facts establishing negligence are undisputed, we see no need for retrial on the question of liability. However, the amount of damages, not having been determined by the trial court, should now be considered.

Therefore, we reverse the judgment of the trial court, enter judgment for plaintiff against defendant and remand the case to the trial court for the determination of damages and entry of the amount of judgment. Costs are assessed against the defendant hospital.

TOMLIN, P.J., and HIGHERS, J., concur.