IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
(Heard at Jackson)

FILED

December 21, 1998

Cecil W. Crowson
Appellate Court Clerk

FOR PUBLICATION

Filed: December 21, 1998

| | | |
|---|---|---|
| FREDA G. MOON, EXECUTOR OF THE ESTATE OF RUTH GARRETT, | ) | |
| | ) | |
| PLAINTIFF/APPELLANT, | ) | DAVIDSON CIRCUIT |
| | ) | |
| v. | ) | Hon. Barbara N. Haynes |
| | ) | |
| ST. THOMAS HOSPITAL, | ) | No. 01S01-9710-CV-00218 |
| | ) | |
| DEFENDANT/APPELLEE. | ) | |

FOR APPELLANT:

Harlan Dodson III
Anne C. Martin
Julie K. Sandine
Nashville

FOR APPELLEE:

Mary Martin Schaffner
Nashville

FOR AMICUS CURIAE:

Richard L. Duncan
Knoxville

# O P I N I O N

REVERSED AND REMANDED                               HOLDER, J.

## OPINION

We granted this appeal to address whether a hospital's general duty to exercise reasonable and ordinary care to maintain an open airway in an intubated patient is negated merely because the transection of an endotracheal tube is an uncommon occurrence. We hold: (1) that under the circumstances, a factual question exists concerning whether the standard of care required placement of an oral airway or bite block when the patient exhibited agitation and began biting on the endotracheal tube; (2) that the foreseeability of the intubated and restrained patient's actions are relevant when assessing the appropriate standard of care and deviation from that standard of care; and (3) that the affidavits of the plaintiff's experts created genuine issues of material fact concerning the standard of care and breach of that standard. The appellate court's decision affirming the trial court's dismissal is reversed. The case is remanded to the trial court for proceedings consistent with this opinion.

## BACKGROUND

On February 6, 1986, Ray Garrett was admitted to St. Thomas Hospital, the defendant. Mr. Garrett underwent successful coronary bypass surgery on February 7. During surgery, Mr. Garrett was intubated with an endotracheal tube to provide ventilation.[1] After surgery, Mr. Garrett was taken to the recovery room where his condition was considered stable.

Nurse Patricia Hoeflein was assigned to Mr. Garrett in the recovery room. Nurse Hoeflein's notes indicated Mr. Garrett "nods yes & no, but [was] very agitated and restless when awake." The notes further indicated that Mr. Garrett

---

[1]An endotracheal tube is a tube placed in the patient's throat to provide the patient's lungs with oxygen.

denied pain but was "figiting [sic] at pacer wires" and "biting" his endotracheal tube. Nurse Hoeflein placed Mr. Garrett in soft arm restraints.

At approximately 1:05 a.m., Ronald McKay, a respiratory technician, changed Mr. Garrett's ventilator. Around 1:40 a.m., McKay decreased the percentage of oxygen that Mr. Garrett was receiving. McKay checked the condition of Mr. Garrett's endotracheal tube and saw no indication of chewing or biting. Approximately ten minutes later, McKay responded to an alarm in Mr. Garrett's room and discovered that Mr. Garrett had bitten and nearly severed the endotracheal tube. McKay sought assistance from respiratory therapy supervisor, Gene Emerson. When they returned to Mr. Garrett's room, McKay observed Mr. Garrett completely sever the tube, and a portion of the tube was lodged in his throat. After several unsuccessful attempts to open Mr. Garrett's mouth, the two men forced a device known as an oral airway into Mr. Garrett's mouth to open his clamped jaws. A physician arrived and extracted the severed portion of the tube from Mr. Garrett's throat. Although Mr. Garrett was successfully reintubated, he had suffered a fatal heart attack during the reintubation procedure.

The plaintiff[2] filed suit against the defendant alleging that the hospital: failed to provide adequate supervision and staffing during Mr. Garrett's recovery from surgery; had prior notice of the possible complications with the endotracheal tube and failed to take appropriate action; and failed to provide the necessary and proper "mouth brace" to protect the endotracheal tube. The plaintiff alleged that the hospital's failure to properly supervise and care for Mr. Garrett was the proximate cause of his death.

---

[2]The captioned plaintiff, Freda Moon, was substituted for the original plaintiff, Ruth Garrett, who was Ray Garrett's wife. Ruth Garrett died after suit was filed.

The defendant hospital filed a motion for summary judgment. The defendant argued that: (1) the transection of the tube was unforeseeable; (2) the defendant provided appropriate staffing and supervision of Mr. Garrett; and (3) because the failure of the endotracheal tube was unforeseeable and no mouth brace or other device had been ordered by a physician, the defendant was under no duty to supply such a device. The defendant's motion relied upon affidavits of Patricia Hoeflein, R.N., and Ronald McKay, R.R.T. Both Hoeflin and McKay testified that they had never previously witnessed a patient bite through an endotracheal tube. McKay further testified that this was the first time he had ever heard of a patient severing an endotracheal tube. Hoeflein testified that she only used bite blocks on patients who were continuously having seizures. Hoeflein testified that she would attempt to calm the patient and orient the patient to the tube if a patient chewed on an endotracheal tube. Hoeflein stated that medication may be used to sedate incoherent or uncooperative patients biting or chewing on their endotracheal tubes. Hoeflein further stated that she had commonly used oral airways "to prevent patients who continually bite on their endotracheal tube to the point they are preventing the air line delivering the breath and oxygen they need."

The defendant offered the testimony of a respiratory therapy supervisor, Gene Emerson, in support of its motion for summary judgment. Emerson testified that he had neither seen nor heard of a patient causing a defect in an endotracheal tube by chewing or biting on the tube. He stated that it was common for patients to gnaw or chew on tubes while their lungs were being suctioned. He opined that no precautions were necessary to prevent a patient from biting on an endotracheal tube provided the biting stopped upon cessation of the suctioning.

4

The defendant also relied on the affidavit of Clifton Emerson, M.D., in support of its motion for summary judgment. Dr. Emerson was the anesthesiologist responsible for Mr. Garrett's care during and after surgery. Dr. Emerson stated that he was aware that patients can intermittently bite on the endotracheal tube and interrupt the ventilatory flow.

> Such biting, which frequently occurs when the patient is being suctioned, is not considered problematic unless the anesthesiologist anticipates the patient might experience seizures. . . . If the anesthesiologist anticipates the patient may bite down on the tube sufficient (sic) to interrupt air flow, he/she will order a bite block or oral airway to be used in order to enable the endotracheal tube to deliver appropriate ventilatory support to the patient. The decision to order a bite block or oral airway is a medical decision.

Dr. Emerson testified that he "had never known nor ever heard of a patient completely transecting an endotracheal tube as did Mr. Garrett" although he has been involved in over 20,000 open heart procedures. Based upon Dr. Emerson's experience and training, "it was not reasonably foreseeable that Mr. Garrett would bite his endotracheal tube in two." Dr. Emerson felt that the incident was "such a freak accident that, even today, [he does] not routinely use bite blocks for post-anesthesia patients." He added that "biting on a tube during suctioning is an ordinary, every day event and in no way represents" the type of emergency that would make a bite block or oral airway appropriate. Finally, the president of the company that manufactured the endotracheal tube that Mr. Garrett transected testified that although he believed that endotracheal tubes can be both bitten "into" and "in two," he was unaware of any other instance where a patient had transected an endotracheal tube.

In opposition to the defendant's motion for summary judgment, the plaintiff relied upon the affidavits of a cardiovascular surgical specialist, Joseph William Rubin, M.D., and two critical care nurses, Nell S. George and Veronica Varallo.

5

All three of the plaintiff's experts stated that "[w]hen the bedside nurse observed Mr. Garrett biting his endotracheal tube . . . she should have either used a bite block or repositioned the tube to keep him from further biting or contacted the treating physician so that he could make that decision." Dr. Rubin opined that "[t]he medical records in this case indicate that the bedside nurse knew Mr. Garrett was biting his endotracheal tube during his recovery from surgery [and that] based on the records, it was foreseeable that the endotracheal tube could become occluded or impaired."

Dr. Rubin premised his opinion on Mr. Garrett's medical records "which indicate that the bedside nurse knew Mr. Garrett was agitated and biting his endotracheal tube during recovery from surgery." Dr. Rubin stated that attending medical personnel have a duty to ensure that a patient's endotracheal tube is not blocked or damaged when the intubated patient displays an agitated behavior or begins biting down on the tube. "One such preventive measure is repositioning of the endotracheal tube, which decreases the extent of damage to one specific part of the tube by teeth biting, thereby decreasing the likelihood of the tube being severed in two. Another preventive measure is the use of a bite block."

The defendant was permitted to offer a supplementary affidavit of Dr. Clifton Emerson. In this affidavit, Dr. Emerson took issue with the alternative actions plaintiff's experts stated should have been taken. In addition, he stated that had he been contacted by the nurse, as plaintiff's experts suggested, Dr. Emerson "would not have ordered a biteblock, oral airway, or any other measures in order to prevent Mr. Garrett from biting the tube." The affidavit went on to state, "Thus, even had the nurse caring for Mr. Garrett contacted me in the early morning hours of February 8, 1986, the outcome of this case would have been no different." By so opining, the defendant argues that Dr. Emerson has

6

interjected "causation" into the summary judgment motion as an additional basis for the motion for summary judgment.

The trial court granted the defendant's motion for summary judgment. The judge opined that no showing had been made from which it could be said that the defendant reasonably knew or should have known of the probability of an occurrence such as the one that caused Mr. Garrett's death. The trial court, therefore, held that Mr. Garrett's death was unforeseeable and that the defendant had no duty to take precautions against such an unforeseeable injury. The trial court did not rule on the "causation" issue, preferring to rest its decision on the determination that no duty was owed to Mr. Garrett.

The plaintiff appealed to the appellate court arguing that her affidavits created genuine issues of material fact. The appellate court affirmed the trial court's dismissal and held that the defendant did not have a duty to prevent the transection "because the transection of the tube was completely unforeseeable." The court also opined that the plaintiff's experts failed to describe the applicable standard of professional care in Nashville or in a similar community as required by Tenn. Code Ann. § 29-26-115(a)(1).[3] Finally, the court faulted the expert proof of the plaintiff because the opinions of those experts were based on an inaccurate factual predicate, i.e., that Mr. Garrett was in an agitated state following surgery.

---

[3]Although the appellate court addressed an issue concerning the failure of the plaintiff's experts to explicitly reference in their affidavits the standard of care in Nashville or in a similar community, the defendant neither filed a motion to strike the affidavits in the trial court nor raised the issue in its motion for summary judgment. The trial court's order did not address the content of the affidavits. This issue, therefore, should not have been raised for the first time on appeal. Harrison v. Schrader, 569 S.W.2d 822 (Tenn. 1978); Moran v. City of Knoxville, 600 S.W.2d 725 (Tenn. Ct. App. 1979). We would note, however, that both parties' affidavits were comparable in that neither explicitly referenced the standard of care applicable in Nashville, Tennessee.

**ANALYSIS**

Summary judgment is appropriate if the movant can demonstrate the absence of any genuine issues of material fact and that the movant is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The non-movant is entitled to the strongest legitimate view of the evidence and is entitled to all reasonable inferences which may be drawn from the evidence, discarding all countervailing evidence. Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)).

The deceased was intubated, restrained, and in critical care. While physicians cannot ensure either recovery from surgery or success of medical treatment, hospitals owe a general duty to prevent patients from injuring themselves following surgical procedures. Keeton v. Maury County Hosp., 713 S.W.2d 314 (Tenn. Ct. App. 1986) (stating hospital's "prime responsibility" includes reasonable attendance to prevent patients from injuring themselves); see also W. Page Keeton et al., Prosser and Keeton on Torts, § 53, at 357 (5th ed. 1984) (stating duty may be analyzed as to "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."). Clearly, a duty is owed to an intubated and restrained patient to maintain a clear and unobstructed breathing passage through an endotracheal tube. See generally Hughes v. Hastings, 469 S.W.2d 378, 381 (Tenn. 1971) (noting use of plastic airway to prevent tongue from obstructing air passage and "to prevent plaintiff from biting . . . the endotracheal tube.").

The defendant argues that the deceased's act was so unusual and extraordinary that the act was unforeseeable; therefore, the defendant was under no duty to guard against such an act. Accidents, however, "almost invariably are surprises, in the sense that the precise manner of their occurrence

8

cannot be foreseen."  Spivey v. St. Thomas Hospital, 211 S.W.2d 450, 455 (Tenn. Ct. App. 1947).  Accordingly, the particular harm need not have been foreseeable if another "harm of a like general character was reasonably foreseeable."  Id. at 457.

The defendant stresses that the accident was not foreseeable, since there is no indication that another patient had ever severed an endotracheal tube.  The record, however, is clear that a risk of some harm is foreseeable if an endotracheal tube is occluded or impaired.  The plaintiff's experts, relying on Nurse Hoeflein's notes and other evidence, create a genuine issue of material fact concerning whether the defendant should have been aware of this risk of occlusion due to Mr. Garrett's behavior.  If a jury were to find that some harm resulting from occlusion was foreseeable in light of the circumstances, then the defendant would also owe a duty to protect Mr. Garrett from completely severing the endotracheal tube, even though this specific harm was never foreseen.  Spivey, 211 S.W.2d at 457.

Perhaps more important to our decision, however, is that the case now before us is specifically controlled by the medical malpractice statute.  The statutory elements of a medical malpractice action are codified at Tenn. Code Ann. § 29-26-115.  The relevant inquiries under this statute are:  the standard of care;[4] a deviation from the standard of care; and causation.  Tenn. Code Ann. § 29-25-115(a)(1)-(3).  Expert testimony is required to prove each of these elements.  Tenn. Code Ann. § 29-25-115(b).  The standard of care and the deviation from the standard of care, therefore, are not established by a reasonable person standard as in other areas of negligence law.  Summary judgment, therefore, is inappropriate if competent expert testimony is conflicting.

_____

[4]"The recognized standard of acceptable professional practice . . . in the community in which he practices or in a similar community."  Tenn. Code Ann. § 29-26-115(a)(1).

9

The proper inquiry in this case is simply whether the defendant's failure to order a bite block or oral airway, reposition the endotracheal tube, or contact the treating physician deviated from the recognized standard of care. The defendant has filed a motion for summary judgment with supporting affidavits alleging:

(1)     "the endotracheal tube['s] . . . failure in this case was unforeseeable;"

(2)     "the defendant provided appropriate staffing and supervision of Mr. Garrett;" and

(3)     because the "failure of the endotracheal tube was not foreseeable and no mouth brace or other device had been ordered by a physician, the defendant had no duty to supply such a device."

In response, the plaintiff countered with affidavits from Nell S. George, R.N., B.S.N., M.S.N., Dr. Joseph William Rubin, M.D., C.M., and Veronica Varallo, R.N. The affidavits of the plaintiff's experts may be summarized as follows:

the beside nurse's care of Mr. Garrett fell below the recognized standard of care when failing to order a bite block, reposition the tube, or contact the treating physician upon observing Mr. Garrett biting his endotracheal tube as occlusion or impairment of the tube was foreseeable.

The hospital record and Nurse Hoeflein's testimony indicate that Mr. Garrett was biting on his tube on two occasions occurring within less than a two-hour period of time. Mr. Garrett became agitated and had to be restrained. The conflicting expert testimony as well as the inferences to be drawn from the record create genuine issues of material fact as to the standard of care and whether a deviation from the standard of care occurred. Resolution of material issues of

10

fact concerning possible deviations from the standard of care is generally within the purview of the trier of fact. Summary judgment, therefore, was improperly granted.

Costs of this appeal shall be taxed against the defendant for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

**Concurring:**

Anderson, C.J.
Drowota and Birch, J.J.