# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 18, 2000 Session

## EDWARD M. TUGGLE, JR., AS EXECUTOR OF THE ESTATE OF MAXINE N. TUGGLE v. AMISUB (SFH), INC., d/b/a ST. FRANCIS HOSPITAL

### A Direct Appeal from Circuit Court for Shelby County
### No. 93577 T.D.     The Honorable Kay S. Robilio, Judge

---

### No. W1999-02444-COA-R3-CV - Filed November 21, 2000

---

Patient sued hospital for injuries sustained when she fell after hospital personnel failed to respond to her call for assistance to go to the bathroom. Patient went to the bathroom without incident and then decided to bathe her feet while she was out of bed. Patient filled a pan of water and sat in a chair bathing her feet when the telephone rang. When she got up to answer the telephone across the room, her wet feet slipped on the floor, and she fell, sustaining injuries. The trial court granted hospital summary judgment, and patient has appealed.

**Tenn.R.App.P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Stephen R. Leffler, Memphis, For Appellant, Edward M. Tuggle, Jr.

David M. Cook, Karen L. Schlesinger, Greg A. Ziskind, Memphis, For Appellee, AMISUB, Inc.

### OPINION

Plaintiff-appellant, Maxine Tuggle, sued the defendant, AMISUB, Inc., d/b/a St. Francis Hospital, for personal injuries allegedly sustained while plaintiff was a patient in the hospital. Plaintiff appealed the order of the trial court granting summary judgment to defendant, and while the appeal was pending, plaintiff died. Edward M. Tuggle, Jr., Executor of her estate, was substituted as party plaintiff-appellant.

The complaint alleges that Ms. Tuggle, 82 years of age, was admitted as a patient at St. Francis Hospital in the late-night hours of February 8, 1998, for a pulmonary problem. The

complaint alleges that she was assigned a room and was instructed by the nurses in the hospital to refrain from moving about the room without the assistance of hospital personnel. At approximately 10:30 a.m. on February 9, 1998, Ms. Tuggle needed assistance in getting from her bed to the bathroom. She alleged that she notified the personnel of her need and that after waiting for some period of time with no response to the initial request, she once again requested assistance and waited for another period of time. No one responded to her second request. The complaint then alleges in pertinent part:

> 11. Ms. Tuggle eventually could no longer wait for assistance and proceeded to the bathroom on her own. Once she finished in the bathroom, she poured water into a pan, proceeded to a chair in the room, sat in the chair and placed her feet in the water. Her feet were bothering her and this was the only thing that she knew that would relieve the pain.

> 12. As she sat with her feet in the water, the telephone rang. Ms. Tuggle rose to answer the telephone and her wet feet slipped on the linoleum floor of the hospital room.

> 13. Ms. Tuggle fell backwards and suffered a compound fracture to her left shoulder and various other injuries to her body as a whole.

The complaint further alleges that the hospital personnel failed to use reasonable care in responding to Ms. Tuggle's request and that their negligence was the cause of her suffering the alleged injuries.

Defendant's answer denied the material allegations of the complaint as to negligence on the part of the defendant and joined issue thereon. The answer as an affirmative defense relies upon the doctrine of comparative fault as to the actions of the plaintiff.

The trial court granted summary judgment to defendant, and plaintiff has appealed. The only issue presented for review is whether the trial court erred in granting summary judgment to defendant.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact

dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

For purposes of summary judgment, defendant considers the facts undisputed as established by the deposition testimony of plaintiff and a supporting affidavit from her daughter, Virginia Ilardi. We quote from the plaintiff's brief:

> Maxine Tuggle, age 82, suffered from chronic obstructive pulmonary disease, a condition also known as emphysema. On February 9, 1998 she was admitted to St. Francis Hospital after complaining of breathing difficulties. Her daughter, Virginia Ilardi, brought Ms. Tuggle to the hospital. At that time Ilardi could barely get her mother to the car. Once arriving at the hospital her mother was put in a wheel chair and transported to a stretcher in the emergency exam room where she remained for six hours and was then taken to a private room on a stretcher.
>
> When Ms. Tuggle was admitted, she was instructed by the nurses at St. Frances to not get out of bed without someone's assistance. In fact, she was told to refrain from going to the bathroom or anything else unless somebody was with her.
>
> Ms. Tuggle was admitted to the hospital and taken to her room sometime after midnight. She slept through the night and awoke that next morning at approximately 6:00 a.m. About 10:30 a.m. Ms. Tuggle needed assistance getting from the bed to the bathroom. She pressed the appropriate button to summon the nurse. A voice came on the intercom and asked her what she wanted. She replied that she needed to go to the bathroom and needed to have someone with her. The voice on the other end of the intercom said "OK" and Ms. Tuggle waited for approximately 15 to 20 minutes. She called the nurses' station again, told them she needed to go to the bathroom and once again she heard the reply "OK."

-3-

After further waiting she gave up on any assistance from the nursing staff and walked on her own to the bathroom. She used the bathroom facilities. On her way out of the bathroom she poured water in a small basin and carried it to a chair so she could soak her feet. Her feet had been swelling and they felt to her to be stinging, and she hoped that the water could give her some relief.

As Ms. Tuggle sat in a chair soaking her feet, the telephone rang. It was located five or six feet away. She stood to answer the telephone, her wet feet slipped on the linoleum and she fell, sustaining a compound fracture to her left shoulder.

Ms. Tuggle lay on the floor with a bone protruding from her left shoulder and blood pouring onto the floor. She screamed for help. Apparently someone heard her shouts and six or seven people responded by entering the room. One of those present was an orthopaedic surgeon, Dr. Moffett. Dr. Moffett "jammed [the bone] back down into place and, of course, I was climbing up his arm and hollering the whole time."

Appellant asserts that the hospital assumed a duty of acting with reasonable care, and when the nurses instructed Ms. Tuggle not to leave the bed without assistance, they assumed a duty to respond to her calls and assist her as needed. The appellant further asserts that it is reasonable to infer that if the nurses had responded to her call for assistance, Ms. Tuggle could have told them that her feet were hurting. They could then have assisted her with treating her foot condition without placing her across the room from the telephone.

Defendant, on the other hand, asserts that in assuming a duty to respond to assist Ms. Tuggle to the bathroom, it is not foreseeable that she would undertake to soak her feet and then with wet feet get up to answer a telephone across the room on a linoleum floor.

A negligence claim requires a plaintiff to prove the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

The general rule is that a hospital must exercise such reasonable care toward a patient as the known condition may require, the extent and character of which depends upon the circumstances of each case. *See Keeton v. Maury County Hospital*, 713 S.W.2d 314, 316 (Tenn. Ct. App. 1986); *Spivey v. St. Thomas Hospital*, 31 Tenn. App. 12, 211 S.W.2d 450, 455 (1947). In the instant case, the hospital personnel obviously instructed Ms. Tuggle not to get out of bed without assistance because of her severe pulmonary deficiency. A somewhat similar situation existed in *Keeton v. Maury County Hospital, supra*. In *Keeton*, the 79-year old plaintiff was admitted to the hospital

with a prostate condition. The hospital was advised upon admission that he had a balance problem, or vertigo, and would need help when he got out of bed. After undergoing prostate surgery, he was catheterized several days, and when the catheter was removed by his physician, one of the nurses from the hospital was present. The plaintiff at that time advised the nurse of his vertigo condition and the necessity for assistance if he got of bed, and the nurse specifically instructed plaintiff to call for help when he was getting out of bed. Subsequently, the plaintiff, like Ms. Tuggle, utilized the call system seeking assistance to go to the bathroom. A nurse came to the door and advised him that an orderly would come, but after several attempts to get help, the plaintiff called his son telling him of his distress, and the son's wife in turn called the hospital switch board seeking to get him some assistance but to no avail. After receiving no assistance, plaintiff, being in such distress that he felt that he was about to wet the bed, got out of bed to go to the bathroom and on his return to bed he lost his balance, fell and broke his hip.

This Court held that the hospital knew and could foresee that the plaintiff might sustain injury if he attempted to get up and go to the bathroom unassisted. We pointed out that he was a lucid, mentally competent patient, and was in great distress because of his need to urinate. We stated:

> Under these circumstances, we feel that the hospital could reasonably foresee that if it did not provide means to take care of the patient's physical demands, the patient would attempt to take care of them himself. The plaintiff's course of action in this case could have been reasonably expected from an average patient and should have been foreseen by the hospital.

*Id.* at 318. We, therefore, reasoned that the hospital's inaction constituted a failure on the part of the hospital to use reasonable and ordinary care under the circumstances, and this directly and proximately caused the injury to the plaintiff. We stated that the hospital did not exercise such reasonable care toward the plaintiff as his known condition required. *See id.* at 318.

In the instant case Ms. Tuggle was not injured because she was forced to get up by physical demands and negotiate her way to and from the bathroom. Although the hospital had a duty to exercise reasonable care under the circumstances, defendant asserts that this must be gauged by reasonable foreseeability by the hospital "that not escorting Ms. Tuggle to the restroom would result in her filling a pan with water, arranging the pan to soak her feet, extracting her feet from the water, and walking across the room without drying her feet to answer the telephone."

In considering the concept of a specific duty owed when an entity is charged with the duty of exercising reasonable care under the circumstances, we look to the guidance of our Supreme Court in *Doe v. Linder Const. Co., Inc.,* 845 S.W.2d 173 (Tenn. 1992), where the Court stated:

> If the defendants failed to exercise reasonable care under the circumstances then they breached their duty to the plaintiffs. The term reasonable care must be given meaning in relation to the

circumstances. ***McCormick v. Waters***, 594 S.W.2d 385, 387 (Tenn. 1980). Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. ***Leach v. Asman***, 130 Tenn. 510, 514, 172 S.W. 303 (1914). The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. ***See Spivey v. St. Thomas Hospital***, 31 Tenn. App. 12, 211 S.W.2d 450, 456 (1948). "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury." ***Tedder***, 728 S.W.2d at 348. Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

*            *            *

The pertinent question is whether there was any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused the plaintiff's injuries. ***Corbitt***, 496 S.W.2d at 918.

***Id.*** at 178.

In this case, as in ***Keeton***, the hospital personnel could easily foresee that a patient in dire distress because of a compelling need to exercise a bodily function, would attempt to get to the bathroom. However, at this point the similarity to ***Keeton*** ends. Ms. Tuggle successfully negotiated her trip to and from the bathroom, and in doing so decided on another endeavor - soaking her feet. She did not call the nurses' station or otherwise seek assistance for this endeavor; thus, she was not denied assistance. There was no compelling reason for Ms. Tuggle to get out of bed to soak her feet, nor should the defendant be charged with foreseeability that she would attempt to walk barefoot with wet feet across the floor to answer the telephone.

Assuming for the purposes of argument that plaintiff has established a duty, breach of duty, and injury, the last two elements for such an action, cause in fact and proximate cause, must be established. In ***Snyder v. Ltg. Lufttechnische GMbh***, 955 S.W.2d 252 (Tenn. 1997), our Supreme Court explained the distinction between cause in fact and proximate or legal cause. The Court said:

The distinction between cause in fact and proximate, or legal, cause is not merely an exercise in semantics. The terms are not interchangeable. Although both cause in fact and proximate, or legal,

-6-

cause are elements of negligence that the plaintiff must prove, they are very different concepts. ***Ridings***, 914 S.W.2d at 83; ***Kilpatrick v. Bryant***, 868 S.W.2d 594, 598 (Tenn. 1993). Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct. ***Kilpatrick***, 868 S.W.2d at 598. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. ***Id.*** Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and "our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient." ***Bain v. Wells***, 936 S.W.2d 618, 625 (Tenn. 1997); ***George v. Alexander***, 931 S.W.2d 517, 521 (Tenn. 1996); ***Kilpatrick***, 868 S.W.2d at 598; ***Smith v. Gore***, 728 S.W.2d 738, 749 (Tenn. 1987).

***Id.*** at 256 n.6.

In the instant case, as previously noted, Ms. Tuggle embarked upon a endeavor of her own without seeking the assistance of hospital personnel, and Ms. Tuggle's action resulted in her fall. The failure of the hospital personnel to respond to her call for assistance to go to the bathroom did not cause her to undertake to soak her feet and then attempt to walk across the floor to answer the telephone.

Accordingly, we affirm the order of the trial court granting summary judgment to defendant. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed to appellant, Edward M. Tuggle, Jr., and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE,