IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 7, 2001 Session

## MINNIE LORENA LONG v. HCA HEALTH SERVICES OF TENNESSEE, INC. d/b/a SOUTHERN HILLS MEDICAL CENTER

Direct Appeal from the Circuit Court for Davidson County
No. 99C-361; The Honorable Marietta M. Shipley, Judge

---

No. M2001-00505-COA-R3-CV - Filed March 26, 2002

---

This appeal involves a personal injury sustained by the plaintiff while a patient at defendant's nursing home facility. The plaintiff filed suit against the defendant for negligence and the case proceeded to trial before a jury. During the trial, the defendant filed several motions for a directed verdict, which were denied. The trial resulted in a hung jury and the court was forced to declare a mistrial. Before the second trial, the defendant renewed its motion for directed verdict. The court ruled that the plaintiff's cause of action should be considered a claim for medical malpractice, but that the plaintiff made out a prima facie case. The plaintiff voluntarily dismissed the suit before the second trial took place and the defendant motioned the court for discretionary costs. The court awarded the defendant only some of the requested costs and this appeal followed. For the following reasons, we affirm the decisions of the trial court to deny defendant's last motion for a directed verdict and to award only partial discretionary costs.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Dixie W. Cooper, Edward A. Hadley, Nashville, TN, for Appellant

Karen M. Weimar, Justin Johnson, Nashville, TN, for Appellee

**OPINION**

**Facts and Procedural History**

On February 5, 1998, Minnie Lorena Long (Ms. Long), an elderly lady, was transferred from Williams Medical Center to HCA Health Services of Tennessee d/b/a Southern Hills Medical Center (Southern Hills). Southern Hills is a nursing/rehabilitive center for the elderly. Ms. Long was

transferred to Southern Hills to receive physical therapy and rehabilitation following two surgeries she had recently undergone.

Southern Hills has a policy of identifying patients at a high risk for falls or other injury. To be considered high risk, a patient needs to meet several of the following criteria: previous falls, confusion, blindness, under the influence of certain drugs, or over seventy years of age. Once deemed a high risk patient, a red flag is placed on the door jam of the patient's door to alert personnel of the patient's condition. Upon Ms. Long's admittance to Southern Hills, she was placed on high risk status and a red flag was placed on her door in accordance with Southern Hills' policy.

On February 12, 1998, Tony Odom (Mr. Odom), a certified nurse technician (C.N.T.) employed by Southern Hills, observed Ms. Long standing in her room with a walker attempting to pull on her pants. Mr. Odom helped Ms. Long back to her chair and instructed her not to get back up until he returned. Upon Mr. Odom's departure from the room, Ms. Long got back up out of her chair to pick up a hair brush and fell, fracturing her hip. Mr. Odom returned to Ms. Long's room four to five minutes later and found her on the floor complaining of hip pain. The injuries to Ms. Long's hip required surgery to repair.

On February 9, 1999, Ms. Long filed suit against Southern Hills. The complaint alleged that Southern Hills acted negligently and failed to adhere to the appropriate standard of care with respect to Ms. Long's accident. Further, the complaint alleged that Southern Hills' failure to adhere to the standard of care proximately caused Ms. Long's injuries. The complaint sought damages for pain and suffering as well as medical expenses. On May 8, 2000, a jury was empaneled and the case proceeded to trial. Ms. Long presented testimony from several witnesses including that of Jeanette Hoppe, C.N.T. (Ms. Hoppe). Ms. Hoppe provided expert testimony as to the applicable standard of care for C.N.T.'s such as Mr. Odom. Ms. Hoppe indicated that under the circumstances, to have complied with the standard of care and Southern Hills' policy, Mr. Odom should have immediately called a nurse, remained with Ms. Long until the nurse arrived, ensured Ms. Long's safety, and found out the reasons Ms. Long was out of her chair in order to assist her with her needs. Based on this standard of care, Ms. Hoppe concluded that in her opinion, Mr. Odom was negligent.

During the course of the trial, Southern Hills motioned the court for a directed verdict three times. The court reserved ruling on the first motion, which was made at the close of Ms. Long's proof. The second motion, made during Southern Hills' presentation of proof, was granted as to all of Ms. Long's grounds for negligence except whether Southern Hills "carelessly and negligently failed to monitor the condition of [Ms. Long]." Finally, at the close of all proof, Southern Hills made its third motion, which was denied by the court.

Before the jury was charged, the court made the determination that the case "was a hybrid of common law negligence and medical negligence." Given the distinctive characteristics of the case, the court allowed Ms. Long to choose whether to submit the matter to the jury as a common law negligence claim, a medical malpractice claim, or both. Ms. Long chose to proceed under

common law negligence. Although Southern Hills requested that the jury be charged in accordance with the medical malpractice act, its request was denied.

The jury was unable to reach a unanimous verdict with regard to Southern Hills' alleged negligence. Accordingly, the court was forced to declare a mistrial. Before a new trial could be conducted, however, Southern Hills again motioned the court for a directed verdict, this time pursuant to Rule 50.02 of the Tennessee Rules of Civil Procedure. In Southern Hills' motion, it argued that dismissal of Ms. Long's remaining claim would be proper because the suit was governed by the medical malpractice act as opposed to common law principles of negligence and that Ms. Long failed to state a claim for medical malpractice.

The court granted Southern Hills' motion in part by holding that Ms. Long's case should proceed solely as a medical malpractice action and not under theories of common law negligence. The court, however, held that Ms. Long had established a prima facie case of medical malpractice and refused to dismiss Ms. Long's claim. In support of its ruling, the court held that Ms. Hoppe's expert testimony was within her area of expertise and that she had sufficiently laid out the standard of care for C.N.T.'s.

After Southern Hills unsuccessfully attempted to gain interlocutory review of the court's refusal to grant its motion for directed verdict, a new trial was scheduled to begin on November 6, 2000. After a request for a continuance by Ms. Long, the trial was again reset for January 22, 2001. Before that date arrived, the case was voluntarily dismissed by Ms. Long due to Ms. Hoppe's refusal to participate in another trial.

On January 26, 2001, Southern Hills filed a motion for discretionary costs pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure. Southern Hills' motion requested reimbursement of the following expenses:

| | |
|---|---|
| Court reporter expense for transcription of May 8, 2000 trial | $3,638.00 |
| Court reporter per diem expense for May 8, 2000 trial | $625.00 |
| Court reporter per diem expense for November 6, 2000 hearing | $150.00 |
| Court reporter expense for deposition of Paul Thomas, M.D. | $105.75 |
| Court reporter expense for depositions of Ms. Long, Kathy Huling and David Huling | $1,100.65 |
| Court reporter expenses for copies of depositions of Tony Odom and Glory Soriano | $174.35 |
| Court reporter expenses for copy of deposition of Barbara Boone, R.N. | $81.00 |
| Court reporter expense for deposition of Scott Pewitt | $306.70 |
| Court reporter expense for deposition of Jeannette Hoppe | $670.40 |
| Expert witness fee of Deborah Robin, M.D. for trial testimony in May 2000 | $1,200.00 |
| Expert witness fee of Deborah Robin, M.D. for preparation | |

| | |
|---|---|
| for trial testimony in May 2000 | $2,000.00 |
| Expert witness fee of Christopher Thompson, M.D. for trial testimony in May 2000 | $560.00 |
| Expert witness fee of Christopher Thompson, M.D. for preparation for January 2001 trial | $500.00 |
| Expert witness fee of Christopher Thompson, M.D. for lost time set aside for testimony in November trial | $500.00 |
| Expert witness fee of Christopher Thompson, M.D. for lost time set aside for testimony in January 2001 trial | $500.00 |
| TOTAL | $12,111.85 |

The court awarded Southern Hills only $1,650.00 in discretionary costs and reasoned that only expenses incurred after the May 2000 trial should be reimbursed. With the order of dismissal being a final order, Southern Hills now appeals the decisions of the trial court as a matter of right.

## Issues

Southern Hills raises two issues, as we perceive them, for our review:

I.      Whether the trial court erred in failing to grant Southern Hills' motion for directed verdict by holding that Ms. Long had made out a prima facie case for medical malpractice; and

II.      Whether the trial court erred by failing to award Southern Hills all of its requested discretionary costs.

## Law and analysis

With regard to the first issue, in ruling on a motion for a directed verdict, both the trial court and the appellate court are required to review the record taking the strongest legitimate view of the evidence in favor of the non-moving party discarding all countervailing evidence and allowing all reasonable inferences in the non-moving party's favor. Williams v. Brown, 860 S.W.2d 854, 857 (Tenn.1993) (quoting Cecil v. Hardin, 575 S.W.2d 268, 271 (Tenn.1978)); Jones v. Zayre, Inc., 600 S.W.2d 730, 731 (Tenn.Ct.App.1980). "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn.1994).

Our medical malpractice statute lists three basic requirements, which necessarily must be shown in order to establish a prima facie case:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or

wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). Southern Hills has made two distinct arguments with regard to whether Ms. Long established a prima facie case for medical malpractice. First, Southern Hills argues that Ms. Long's injury was unforeseeable such that Southern Hills owed Ms. Long no duty of care. Second, Southern Hills argues that Ms. Long failed to establish that its actions proximately caused her injuries.

In support of its arguments that Ms. Long's injury was unforeseeable and that no proximate cause has been shown, Southern Hills relies almost exclusively on Tuggle v. AMISUB (SFH), Inc., No. W1999-02444-COA-R3-CV, 2000 WL 33191369 (Tenn. Ct. App. Nov. 21, 2000), a recent opinion issued by this Court. Tuggle also involves an action brought by an elderly patient against a nursing home for injuries sustained when the patient fell while under the nursing home's care. In Tuggle, the elderly patient attempted to contact the nursing home staff to assist her in going to the restroom. After attempts to get help from staff failed, the patient went to the restroom by herself. Id. *2-3. After using the restroom, the patient decided to draw a pan of water to bring back to her chair to soak her feet. Id. at *3. Soon after, while soaking her feet, the phone rang and the patient attempted to get up to answer it. She fell because of her wet feet and sustained injuries. Id.

The patient filed suit against the nursing home alleging that the nursing home negligently failed to assist her with her needs. Id. at *1. This Court held that under those circumstances, the failure of the hospital staff to help the patient to the restroom did not make her actual injuries foreseeable. Id. at *5. Further, with regard to causation, we stated that the staff's failure to assist her "did not cause her to undertake to soak her feet and then attempt to walk across the floor to answer the telephone." Id.

We find that our opinion in Tuggle, while insightful, is not dispositive to the outcome of this case with regard to either foreseeability or proximate causation. Several significant differences in the cases are immediately recognizable. First and foremost, the patient in Tuggle filed suit against the nursing home because they failed to assist her with her needs. Here, Ms. Long's remaining basis for negligence concerns Southern Hills' failure to properly monitor her. Although, as in Tuggle, it would not have been proper to relate the patient's trip to the bathroom to her fall with wet feet in terms of foreseeability and proximate cause, we have a very different situation here.

With regard to foreseeability, in the case *sub judice*, evidence was presented that Ms. Long had an appointment with a doctor at a bone and joint clinic on the day of the accident. Further, when Mr. Odom passed by Ms. Long's room, he found her out of her chair pulling on pants. Ms. Long alleges that Mr. Odom did not follow hospital procedure and did not properly monitor her, but instead helped her back into her chair and merely requested that she not get up again until he returned. It is foreseeable that she would continue her activities, which could have included

-5-

preparing for her visit without Mr. Odom's assistance. Further, given Ms. Long's mental condition, foreseeability is not destroyed by the fact that Mr. Odom had asked her to remain in her chair.

We also note that hospitals owe a general duty to their patients to protect the patients from injuring themselves. Moon v. St. Thomas Hosp., 983 S.W.2d 225, 229 (Tenn. 1998). As previously stated by this Court, the duty of care should extend to a patient "as his known condition may require and the extent and character of this care depends on the circumstances of each case." Keeton v. Maury County Hosp., 713 S.W.2d 314, 317 (Tenn. Ct. App. 1986) (citing Spiven v. St. Thomas Hosp., 211 S.W.2d 450 (Tenn. Ct. App. 1947)). We must remember that Southern Hills considered Ms. Long to be at a high risk for falls and was under a duty to act accordingly. In addition, Southern Hills acknowledged the mental condition of Ms. Long as well as her history of accidents. Accordingly, because the circumstances of this case indicate that Ms. Long's fall was foreseeable, we hold that Southern Hills had a duty of care to take reasonable precautions in preventing it.

With regard to proximate cause, we also note the differences between the present case and Tuggle. As stated above, in Tuggle, it could not be said that the nursing home's failure to help the patient to the bathroom caused the intervening act of the patient soaking her feet in water and then slipping with her wet feet. Here, however, sufficient evidence exists for purposes of opposing a directed verdict, that would tend to show that Mr. Odom's failure to monitor Ms. Long proximately caused her injuries.

When reviewing proximate cause, we must first look to the alleged breach of duty that occurred and determine whether that specific alleged breach proximately caused Ms. Long's injury. Again, as stated above, Ms. Hoppe testified that to have complied with the standard of care and Southern Hills' policy, Mr. Odom should have immediately called a nurse, remained with Ms. Long until the nurse arrived, ensured Ms. Long's safety, and found out the reasons Ms. Long was out of her chair to assist her with her needs. In more basic terms, Ms. Hoppe testified that Southern Hills should have done a better job monitoring Ms. Long.

Ms. Long asserts that because Mr. Odom failed to follow this standard of care, she fell while attempting to get up on her own. Ms. Hoppe provided expert testimony to this effect as well. Southern Hills argues that this evidence amounts to mere speculation in that one would have to guess whether following the standard of care would have prevented the accident. We disagree for purposes of this directed verdict and hold that sufficient evidence was presented such that reasonable minds could disagree as to whether Southern Hills' actions proximately caused Ms. Long's injuries.

With regard to the second issue raised by Southern Hills, section 20-12-119 of the Tennessee Code authorizes judges presiding over civil matters to adjudge and apportion costs to the parties in their discretion as "the equities of the case demand." TENN. CODE ANN. § 20-12-119 (1994). In addition, Rule 54.04(2) of the Tennessee Rules of Civil Procedure specifically discusses the availability of discretionary costs. Rule 54.04(2) provides in pertinent part that:

Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. . . . The court may tax discretionary costs at the time of voluntary dismissal.

Tenn. R. Civ. P. 54.04(2).

When awarding discretionary costs, as the name denotes, judges are given broad discretion and their decisions will not overturned on appeal unless the challenging party can clearly demonstrate an abuse of discretion. See Placencia v. Placencia, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999) (citing Perdue v. Green Branch Mining Co., 837 S.W.2d 56, 60 (Tenn. 1992)). In determining whether an abuse of discretion has occurred, appellate courts must not merely substitute their judgment for that of the trial court. White v. Vanderbilt Univ., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)  Instead, appellate review must seek to determine whether the lower court's decision has a basis in law or fact and is therefore not arbitrary, illogical, or unconscionable. State v. Brown & Williamson Tobacco Corp., 18 S .W.3d 186, 191 (Tenn.2000). Where a court has improperly construed or applied the applicable legal principles, appellate courts may properly reverse the trial court's decision. White, 21 S.W.3d at 223.

We recently stated in Milliken v. Crye-Leike Realtors, No. M1999-00071-COA-R3-CV, 2001 Tenn. App. LEXIS 472 (Tenn. Ct. App. July 5, 2001) the following:

Generally, trial courts award such [discretionary] costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. The successful party is not, however, automatically entitled to an award of costs. Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs. Sanders v. Gray, 989 S.W.2d at 345 (citations omitted).

Discretionary costs are not punitive, but are merely another method of making the prevailing party whole. Even though the prevailing party is not automatically entitled to an award of discretionary costs simply because it prevailed, courts generally award discretionary costs if they are reasonable and if the party requesting them has filed a timely, properly supported motion satisfying the requirements of Tenn. R. Civ. P. 54.04(2). Stalsworth v. Grummons, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000); Turner v. Turner, 1997 Tenn. App. LEXIS 219, No. 01 A01-9506-CV-00255, 1997 WL 136448 at *17 (Tenn. Ct. App. Mar. 27, 1997) (no Tenn. R. App. P. 11 application filed). Similarly, the language of Tenn. R. Civ. P. 54.04 (1) implies that a prevailing party will generally be awarded court costs.

Thus, identification of the prevailing party is a relevant factor in assessing costs. This court has determined that an award of less than the amount of damages sought does not negate the plaintiff's status as a prevailing party. Sanders v. Gray, 989 S.W.2d at 345. Similarly, we have previously rejected an argument that costs should be assessed according to the fault assigned. Hollifield v. City of Morristown, 1996 Tenn. App. LEXIS 603, No. 03 A01-9605-CV-00172, 1996 WL 539766 at *2 (Tenn. Ct. App. Sept. 25, 1996) (no Tenn. R. App. P. 11 application filed) (rejecting the argument that in every case where comparative fault is determined that costs must be precisely based on the degree of fault of each defendant). Thus, where there are no counterclaims or crossclaims involved, a plaintiff who is awarded damages is generally considered to be the prevailing party.

Id. at *35-37. Further, as pointed out by Southern Hills, in addition to the general rule that the prevailing party may be entitled to discretionary costs, trial courts may also properly award discretionary costs against parties who voluntarily dismiss their claims "to alleviate harm to a defendant." See Panzer v. King, 743 S.W.2d 612, 615-16 (Tenn. 1988).

Here, Southern Hills argues that the trial court abused its discretion by misweighing the equities between the parties, chosing an illogical basis for limiting discretionary costs and failing to uniformly apply it, and failing to identify and apply the appropriate legal principles. Unfortunately, the trial court provided limited reasoning behind its decision in granting Southern Hills only $1,650.00 in discretionary costs. The court merely stated that it found "that [Southern Hills] should be awarded a judgment for discretionary costs incurred after the May 2000 trial in this matter, which resulted in a hung jury."

The short statement by the court, however, is clearly in line with the equities of this case. As stated above, the May trial resulted in a hung jury, forcing the trial court to declare a mistrial. Although Southern Hills claims to be the prevailing party due to the fact that it was partially granted a directed verdict, certain bases for liability were extinguished and the status quo was maintained, we disagree. After the May trial, Ms. Long still maintained a viable claim against Southern Hills for the injuries she sustained. Further, following the May trial, Ms. Long forced Southern Hills to prepare for a second trial, delayed the proceedings, and eventually voluntarily dismissed her suit. In line with our reasoning in Panzer, the court acted properly in awarding Southern Hills discretionary costs for this second trial that ended prematurely. Accordingly, we agree with the reasoning behind the court's decision.

Finally, Southern Hills argues that the trial court did not accurately apply its basis to all of the discretionary costs requested. Specifically, Southern Hills argues that the court erred by refusing to award the cost incurred in obtaining a transcript of the May 2000 trial. Southern Hills argues that this omission was error because the transcript was needed to effectively argue its directed verdict motion made after the mistrial. We disagree with Southern Hills. Although the expense was incurred after the mistrial was declared, Southern Hills' motion was an attack on the May 2000 trial. Ms. Long's decision to delay and voluntarily dismiss the suit before the second trial took place did not have an effect on Southern's Hills decision to bring this motion. Further, although Southern Hills persuaded the court to rule that Ms. Long's case properly fell within the realm of medical malpractice, the court refused to grant the motion. The mere fact that the actual motion occurred after the mistrial is no indication that the equities, as we see them, demand compensation to Southern Hills for this expense. Accordingly, with Southern Hills failing to rise to the level of a prevailing

party in the May trial and failing to adequately show the court's basis as illogical or out of line with the equities in the case, we affirm the court's ruling on discretionary costs.

## Conclusion

For the foregoing reasons, the decision of the lower court is affirmed. Costs of this appeal are taxed against the Appellant, HCA Health Services of Tennessee d/b/a Southern Hills Medical Center, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE