Judges Catron and Peck,
delivered their opinions seria-tim, as follows :*
Catron, Judge. 1. The debt was due when suit was brought. It is an acknowledgment of a subsisting debt, viz: “due John Dew twelve dollars and fifty cents, value received,” &c.
2. This court does not interfere with the courts below in matters of practice, unless plain rules of proceeding are clearly violated. We think this far from being the case in granting the writ of certiorari in this cause. According to the petition, and which must be taken as true, the petitioners had merits. They also set out sufficient reasons why they did not appeal.
The evidence of usury read on the trial was the statement filed upon oath of the plaintiff, James Eastham. He states the facts to be these: John Dew came to Eastham, and asked him to borrow money; he replied he had none to lend, but he would buy cash notes at the usual discount.
Dew then asked him if he would take cash notes on his brother, Jose C. Dew, endorsed by himself, John. East-ham replied he would. Jose C. Dew then made four due bills of $25 each, and one for $12 50, to John Dew, who endorsed the same, and delivered them to Eastham. *464 The Dews and Eastham then went before John W. Ford, a justice of the peace for White county, where a warrant was issued on each of the five notes, service admitted, anc] judgment rendered against John and Jose C. Dew, for the sums the notes called for, amounting to $112 50. This occurred 11th October, 1828, and Eastham was to wait until March, 1829. This was an agreement for time, and the only reason why defendants made the arrangement. If no lime had been given, they would have sus. tained an immediate loss by the transaction. Eastham let them have for the notes, and the judgments confessed, $75, in full for the $112 50, to be paid the 1st of March, 1829. For the loan of the $75 four months and 20 days, defendants agreed to pay $37 50 by way of advance, and six per cent, interest on $112 50, ($2 62;) making $4012, for giving day on $75 four months and twenty days. This was taking after the rate of upwards of 140 per cent, per annum, instead of six per cent.
That these notes were made for the express purpose of raising the money, and for the first time delivered to East-ham, is manifest. The whole class of usury cases so destructive to the country in 1819, were of this precise description. The notes were made to sell in the market at a discount. They were held usurious in many cases in this covjrt. Napier vs. Stump, was the first brought up; when the correctness of the New York decisions were recognized. (2 Johns. Cas. 60; 3 Johns. Cas. 206 and 69; 15 Johns. Rep. 55, 355; 17 Johns. Rep. 176.
Could the statute be avoided by so shallow a contrivance, legislation would be idle. The usury in this instance was extremely gross. A new trial should have been granted, because the facts were undisputed, when the usurious excess should have been deducted by the judge, according to the statute of 1819.
Feck, Judge.
As it appeared to the county court by the petition of the Dews, that there was five notes of hand all made the same day, by and to the same individual., ■ md as many warrants and judgments on one day, amount *465 ing in all to $112, the court should have ordered the causes to be brought up and consolidated, so as to make the whole but one cause, for it was sufficiently apparent that one part of the arrangement between the parties was a fraud upon the jurisdiction, and this ought not to be tolerated, for many reasons. A plaintiff has an advantage in suing before a justice of the peace, which he could not have if the suit was by writ. The question before thejus-tice may be one of difficulty. The defendant has not the benefit of his jury trial before thejustice; and to have the benefit of it he must either take an appeal, or resort to his writ of certiorari; ineither case, he is obliged to give security for the money: whereas, if sued by writ, he only gives security for his appearance. But this is not all; he is without pleadings, except the case be such an one as requires them to be filed; and the statute of usury is perhaps the only one which requires a plea and issue, where the case comes into court from before a justice.
Justices proceed with expedition; the process of summons, judgment and execution, occupy but a few days. If the party takes his stay of execution, security must be given for the money. These are all so many hardships brought upon such as are driven into the hands of traders and money lenders, who can, and if foliated, will dictate as part of theteims, the division intmnotes to secure the jurisdiction, to multiply liabilities by drawing in securities for the money, either by taking appeals, resorting to certioraries, or staying executions. And it may befitly remarked in connection, that the smaller the sums, when subdivision is made, the shorter the term for stay of execution.
This much is said to show how glaringly iniquitous it is for a party to practice such a fraud upon the jurisdiction. A rule of law is, that consent will not give jurisdiction. Admit that parties to a contract can thus by consent subdivide, and what is it but consenting to jurisdiction, where otherwise the law would not give it? The case before us is one where there has been fertility of inven*
*468 The writ in this action was brought 1st of April 1828, the same day the warrant was issued by the justice.
In proceedings before a Justice of the Peace, all pleas are supposed to be put in ore terms-, and we will always suppose a plea filed, suited, to the matter before the justice. The objection was, that the rent was not due.— Where the action is brought too soon, the old rule was to plead that in abatement. But it must be seen, that oftentimes it was difficult for a defendant to put in this plea according to the facts which might be proved; but it was subsequently ruled, that it was matter upon the proof fora non-suit; and so we will take the justice’s judgment; for the ilideo consideratum est” is notin this judgment rendered by the justice; and following technicalities, that would be necessary to show that the case went off upon the merits.
What then was the effect of the justice’s judgment when given in evidence to the jury? At most it could be but persuasive only of the point the justice had tried.— What was that? Not the question of the promise made for the rent; but whether, supposing the promise made, it was due when the warrant was brought; of that fact the jury would judge, and the judgment of the justice being directly between the same parties on that point, could be us^Bs a make-weight. It was not conclusive. To fie so, two things must have concurred: 1st. That the same point had been tried and settled in the former suit that is put in issue by the present. 2d. That this matter tobe an estoppel,must be pleaded. Then, and not till then, would the party be concluded. See 1 Starkie’s Ev. part 4, sec. 66, et seq. and the authorities there cited; Cooke’s Rep. 305.
The above rules however, have their qualifications: “When a fact has been once directly decided, it shall not again be disputed between the same parties. Therefore, where the decision is directly upon the point, it may be pleaded in bar, in cases where special pleading is required, and in other cases given in evidence on the general issue, as conclusive between'the same parties on the same matter, whether the same came in question directly or *469 incidentally. For the maxim is nemo debet bis vexari pro eadem cansa.” , k
Testing the charge of the court by any-<5 f^. these rules, this charge to the jury gave weight and effect to the justice’s judgment beyond what the lawaccords to it.
The charge, in effect is, that if the rent was due, and the justice mistaking the fact, found it was not, no action for the same matter could be brought. The party must appeal, or remain where the justice had placed him.?
This was telling the jury without relation to the point tried, that the record, though not pleaded, was when offered, a bar to the plaintiff’s recovery. In this there was error.
The courts have been long sensible of the difficulties which might arise from the loose manner of preparing and keepingjustice’s records, and a concurrent jurisdic-ion in the county court with the justice, as to like matters. If wc say that it must appear from the record that the same point was in issue, or otherwise the record be rejected, most justice’s judgments being latent as to the matter in issue, could not be received in evidence. The consequences would be, that persons suing before justices of the peace, in cases where the county court jurisdiction was concurrent, could try an experiment before thejus-tice, and failing there, commence a new suit in the bounty court.
To prevent such an evil, we are compelled to consider the pleadings before the justice as done ore tenus. It lets in proofs, as in the case before us, of what was the matter before the justice. The jury of course then will receive it with the other proof, and give it due weight, not disregarding the other testimony.
Catron, Judge.
I take the rule to be, that a fact which has been once directly decided, shall not again be disputed between the same parties; and therefore, a judgment of the same court, or one of concurrent jurisdiction, whether upon verdict, demurrer, or by default, if directly upon the same point, may be pleaded in bar as *470 an estoppe (1.Peak’s Ev. 34; Philips on Ev. 223-4; Starkic on Ev. 200. Autram vs. Morewood, 3 East’s Rep. 211, 212.
So the judgments of justices, and of inferior jurisdictions, as commissioners of bankrupts, excise officers, &c. arc equally conclusive upon the point adjudged. (Stark, on Ev. 211, 212. But it is only evidence of the very fact adjudged or determined. If the cause was determined upon a collateral matter or issue, as that the debt was not due, or the court or justice had not jurisdiction, and the suit dismissed, the judgment is n.o bar to a recovery upon the merits in another action, because the issue, whether the defendanl did or did not assume, has not been adjudged and determined. (1 Stark, on Ev. 201-2.
I am strongly inclined to the opinion, that the judgment of the justice could not be given in evidence, unless pleaded by. way of estoppel, as a bar to this suit. The judgment must furnish evidence of an estoppel and bar, or it proves nothing material to this issue. If the issue tried by the justice was, “is the rent now due?” he determined in the negative, and nonsuited the plaintiff. How can this be persuasive evidence that the defendant was not indebted? I distrust the application of the rule hold^r| in Vooght vs. Virch, (2 Barn, and Alderson 662, cited in 1 Stark. Ev. 208,) to the action of assumpsit, if the decision can be sustained upon principle, in any case, which I doubt. It is there declared, that a verdict and judgment for the defendant in a former suit, for the same cause of action, may be by him given in evidence under the general issue, in an action on the case for diverting the water from the plaintiff’s mill, as pregnant evidence to guide the jury to find in defendant the better title to the use of the water, but 'hat it was no estoppel unless pleaded as such in bar; and the jury might find a verdict for the plaintiff, notwithstanding the former judgment for the defendant. If evidence, it proved the plaintiff had no right to recover damages; the former verdict andjudg* ment were a conclusion from facts, final as to the parties rights; because that which has been once adjudged and *471 determined, directly between the parties by a competent court, is the highest grade of evidence of the right, and shall never again be controverted. Litigation would be endless were this not so. It is part of the law of nations, as well as that of all civilized governments of whose laws we have any knowledge.
I am of opinion that verdicts and judgments in all actions where they are admissible as evidence, without being pleaded in bar as an estoppel, are equally conclusive of the fact directly adjudged, as if pleaded. And if competent to be given in evidence under the general issue in assumpsit, show conclusively, that no cause of action existed, when the second action for the same claim (previously determined) was commenced. Upon this principle alone, if at all, can the judgment be evidence under the general issue. This position I think supported by the former English authorities,' furnishing rules for the government of the courts of this State. Peake on Ev. 34, lays down the law with excellent precision. See also, Phillips’ Ev. 224; 1 Starkie’s Ev. 205, see. 66.
Parol evidence is admissible to show the fact or issue tried and determined by the justice. It is even so in cases where the pleadings are in writing, but the judgment general and uncertain. (1 Starkie’s Ev. 202, sec. 65. It must be so of necessity where the defence is not on paper.
The circuit judge clearly erred, when he instructed the jury in effect, that whether the justice did or did not try the merits, the judgment was conclusive.
He ought to have told them, that if in their opinion, the justice non-suited the plaintiff, Estill, because in the opinion of the justice, the demand warranted for was not due, they should disregard the judgment, as not having been given upon the issue they were sworn to try; but if the justice adjudged the same matter, whether Taui did or did not owe, then they should find for the defendant, the judgment being conclusive of the fact, that Taul did *472 not owe the debt sued for; Estill not being permitted to gainsay the truth of the magistrate’s finding.
Whyte, Judge, concurred.
Judgment reversed.

 Whyte, Judge, did not :;el, in this cause.