# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Submitted On-Brief July 31, 2007

## HEATHER HILL, ET AL. v. ANDREA GIDDENS, M.D., ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002530-02     The Honorable Karen R. Williams, Judge**

---

**No. W2006-02496-COA-R3-CV - Filed November 29, 2007**

---

Patient filed a complaint against Doctors, OB/GYN Group, and Hospital (together "Defendants") alleging medical malpractice for failing to obtain informed consent and failing to properly care for Patient during and after her hospitalization. The trial court granted summary judgment in favor of the defendants on the grounds that Patient failed to provide a competent medical expert as required by T.C.A. § 29-25-115 (Supp. 2006). Patient appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and DAVID R. FARMER, J., joined.

Russell John Johnson of Memphis, Tennessee for Appellants, Heather and LaQuinn Hill

James T. McColgan and Liza V. Rubin of Memphis, Tennessee for Appellees, Andrea Giddens, M.D. and Memphis OB/GYN Associates, P.C.

Buckner Wellford, Jill M. Steinberg and Imad Abdullah of Memphis, Tennessee for Appellee, William David Stinson, M.D.

### OPINION

### I. FACTS AND PROCEDURAL HISTORY

Starting in September of 2000, Heather Hill ("Patient" or "Mrs. Hill")[1] sought prenatal care, delivery of her baby, and postnatal care from Andrea Giddens, M.D. ("Dr. A. Giddens") and Memphis OB/GYN Associates, P.C. ("MOGA").[2]

On May 5, 2001, Patient went to Methodist Healthcare d/b/a/ Germantown Methodist Hospital ("Hospital") to give birth to her son. The on-call obstetrician, William David Stinson, M.D. ("Dr. Stinson"), performed a Cesarean section ("C-section").[3] Because Dr. A. Giddens was not the on-call obstetrician on May 5, 2001, she did not perform the surgery, but did provide Patient with prenatal and postnatal care until December 14, 2001.

In May of 2002, Heather Hill filed a Complaint in Shelby County Circuit Court against Dr. A. Giddens, Gus A. Giddens, M.D., Dr. Stinson, MOGA, and the Hospital[4] alleging medical malpractice. In the Complaint, the Patient alleges that, since undergoing a C-section, she has experienced a "constant burning sensation and lower stomach pain." Specifically, the Patient claims that she was later diagnosed by another physician as having a vesicouterine fistula (*i.e.*, a hole between her bladder and uterus). Patient claims that this hole resulted from her C-section, that the Healthcare Providers failed to obtain informed consent before performing the C-section, and failed to properly care for her during and after her hospitalization.

In 2003, Dr. A. Giddens, Dr. Stinson, and MOGA filed Motions for Summary Judgment. In relevant part, the Motions stated that the Patient had failed to provide a competent medical expert who could offer evidence that the Healthcare Providers in this case acted with less than ordinary and reasonable care in accordance with the recognized standard of care. As support for their Motion, the Healthcare Providers submitted the affidavits of Dr. Giddens and Dr. Stinson stating that their medical treatment of Mrs. Hill conformed to the required standard of care. On December 3, 2004, almost two years after the Patient filed this action, the Healthcare Providers' Motions were first heard by the trial court. At that point, the Patient still had not designated or disclosed an expert witness as required by T.C.A. § 29-26-115 (Supp. 2006). By Order of January 11, 2005, the trial court granted the Motions for

---

[1] Mrs. Hill filed this complaint, individually, with her husband, LaQuinn Hill, and as next friend of her minor son, Cameron Hill. Her husband and child bring a derivative suit alleging loss of consortium and are included in this action. For ease of reference, Appellants shall be referred to herein as "Patient."

[2] The Patient sued MOGA on a theory of *respondeat superior*.

[3] At that time, Dr. Stinson was also employed by MOGA.

[4] Dr. Gus Giddens was voluntarily dismissed by the Patient (Order of Dismissal effective December 12, 2002) and Hospital was dismissed with prejudice after settling with the Patient (Order of Dismissal effective March 31, 2006). Dr. Gus Giddens and Germantown Methodist Hospital are not a party to this appeal. The remaining defendants, Dr. A. Giddens, Dr. Stinson, and MOGA, shall be referred to collectively as "Healthcare Providers," "Defendants," or "Appellees."

Summary Judgment but gave the Patient an additional thirty (30) days to "submit competent expert pursuant to T.C.A. § 29-26-115." [5]

On December 30, 2004, the Patient filed the Affidavit of John Y. Phelps, M.D. ("Dr. Phelps"). Dr. Phelps, along with Dr. A. Giddens and Dr. Stinson were deposed and a jury trial commenced on March 27, 2006. During the trial, the Patient proffered Dr. Phelps as her medical expert and attempted to proffer his testimony to establish the recognized standard of care and to establish the causation. Although the Healthcare Providers did not object to Dr. Phelps' competence prior to trial, on March 30, 2006, all Healthcare Providers orally moved to exclude Dr. Phelps' testimony. After allowing the Healthcare Providers to *voir dire* Dr. Phelps, the court excluded the testimony. Specifically, the trial court ruled that Dr. Phelps did not satisfy the "locality rule" (T.C.A. § 29-26-115) because he was not sufficiently familiar with the local standard of care in Memphis. The trial court dismissed the jury.

On April 10, 2006, the Patient requested permission to take an interlocutory appeal from the trial court's exclusion of Dr. Phelps. Dr. Stinson requested permission to take interlocutory appeal regarding whether the trial court's January 11, 2005 Summary Judgment Order was self-effectuating. The trial court granted both Motions; however, this Court denied both interlocutory appeals.

On June 23, 2006, the court reconsidered the Motions for Summary Judgment previously filed by the Healthcare Providers. The trial court held that the Motions were properly before the court as the Patient had failed to offer a competent medical expert. During the hearing, the Patient advised the court that she intended to appeal the denial of her Rule 9 interlocutory appeal to the Supreme Court. Consequently, the trial court reserved ruling on the pending Motions for Summary Judgment until the Patient completed the appellate process. The court also ruled that, if the Supreme Court denied the Patient's application, the Healthcare Providers could ask the court to consider their Motions for Summary Judgment by a simple letter of notice. The trial court cautioned the Patient that, should it grant the hearing, the Healthcare Providers' Motion would be granted if the Patient produced no expert.

On August 21, 2006, the Tennessee Supreme Court denied the Patient's application. On August 25, 2006, the trial court considered the Healthcare Providers' Motions for Summary Judgment again. The Patient did not present an expert affidavit or any documentation naming a new expert witness. The trial court gave the Patient until September 1, 2006, to submit an expert affidavit.

On September 1, 2006, the trial court heard the Motions for Summary Judgment for the final time. On that same day, the Patient filed a Notice of Dismissal Without Prejudice and an

---

[5] In its January 11, 2005 Order Granting Summary Judgment Effective 1/3/05, the trial court states that the judgment is effective 1/3/05, thereby allowing Patient time to comply with the expert requirement.

affidavit from Elliott B. Oppenheim, M.D., J.D., LL.M.[6]  In relevant part, Dr. Oppenheim's affidavit states that he could not locate a medical expert in the time allotted by the trial court. By Order of September 1, 2006, the trial court granted the Healthcare Providers' Motions for Summary Judgment stating that "[p]laintiffs were without an expert in this cause and that all Defendants' Motions for Summary Judgment were well taken and should be and hereby are granted."

Patient timely appealed to this Court.  Upon review of the record, we found that the September 1, 2006 Order was not effectively entered as required by Rule 58, Tenn. R. Civ. P. In an Order dated August 30, 2007, we remanded this case to the trial court with instructions to comply with the requirements of Rule 58, Tenn. R. Civ. P., and to produce an effective final order appealable as of right.  On September 26, 2007, the trial court entered a "Finding of Fact and Order Granting Final Judgment as to Defendants Andrea Giddens, M.D., William David Stinson, M.D., and Memphis OB/GYN Associates, P.C."  We find that this Order satisfies the requirements of a final order.

## II. ISSUES PRESENTED

The Patient appeals and presents five issues for review as stated in her brief:
1)Whether the Trial Court applied an incorrect legal standard, and reached an illogical or unreasonable decision, when it agreed to consider and grant Defendants' motion for summary judgment, when no motion was filed nor docketed, and ignored Plaintiffs' notice of non-suit after the Trial Court had already agreed in March 2006 to consider it.

2) Whether the Trial Court, days after its March 30, 2006 ruling to accept the Plaintiffs' request for permission to seek an interlocutory appeal or in the alternative take a voluntary non-suit without prejudice to refiling same, applied an incorrect legal standard, and reached an illogical or unreasonable decision, when it agreed to reconsider Defendants' motion for summary judgment heard December 3, 2004, without notice nor additional pleadings filed.

3) Whether the Trial Court applied an incorrect legal standard, and reached an illogical or unreasonable decision, when it accepted Defendants' summary judgment position on September 1, 2006, without considering if the requirements of summary judgment were properly met, in disregarding Plaintiff's 56.07

[6] Dr. Oppenhiem is a "Medical-Legal Consultant."

affidavit for more time, and in disregarding Plaintiffs' motion for extension of time to name new expert witness.

4) Whether the Trial Court applied an incorrect legal standard, and reached an illogical or unreasonable decision, when it misinterpreted the law requiring affidavit to match affidavit, and proceeded to enter an order granting summary judgment when the requirement preventing summary judgment had been satisfied.

5) Whether the Trial Court applied an incorrect legal standard, and reached an illogical or unreasonable decision, when it disallowed Plaintiffs' expert medical witness under the guise of failing to meet the "locality rule," when Dr. Phelps had satisfied sufficient knowledge of the Defendants' local community or of a similar community.

Based on our reading of the briefs, we perceive the dispositive issues to be:

1. Whether the trial court abused its discretion when it disqualified the Patient's expert witness, John Phelps, M.D., pursuant to T.C.A. § 29-26-115.
2. Whether the trial court erred in granting summary judgment in favor of the Healthcare Providers.
3. Whether the trial court abused its discretion in entertaining the Motions for Summary Judgment on September 1, 2006.

## III. DISCUSSION

The Patient first argues that the trial court abused its discretion in disqualifying the proffered expert Dr. Phelps. Specifically, the Patient contends that no expert was needed for her claims. In the alternative, the Patient argues that Dr. Phelps was qualified to testify as a medical expert under the T.C.A. § 29-26-115.

T.C.A. § 29-26-115 provides as follows:

In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

(c) In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(d) In a malpractice action as described in subsection (a), the jury shall be instructed that the claimant has the burden of proving, by a preponderance of the evidence, the negligence of the defendant. The jury shall be further instructed that injury alone does not raise a presumption of the defendant's negligence.

T.C.A. § 29-26-115.

It is well settled that expert testimony is required to establish the standard of care, a deviation from the standard of care, and proximate causation in all medical malpractice actions except those in which the alleged negligence is within "the common knowledge of laymen." *Phelps v. Vanderbilt Univ.,* 520 S.W.2d 353, 357 (Tenn. Ct. App. 1974). Only the most obvious forms of negligence fall within the common knowledge exception. *Ayers by Ayers v. Rutherford Hosp., Inc*., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984). The Tennessee Supreme Court has stated that "in those malpractice actions wherein expert testimony is required to

establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise." ***Bowman v. Henard,*** 547 S.W.2d 527, 531 (Tenn. 1977).

Here, the Patient bears the burden of proving, *inter alia*, that she did not give informed consent for the C-section; that Dr. Stinson caused the fistula; that such action constitutes malpractice; and that Dr. Giddens and MOGA's postnatal care was below the standard of care. Because the alleged malpractice in this case is not "within the common knowledge of laymen," the trial court did not abuse its discretion in requiring the Patient to obtain a medical expert.

We now address whether the trial court erred in excluding Dr. Phelps' testimony. It is well-settled that the trial court is vested with broad discretion to determine the "admissibility, qualifications, relevancy and competency of expert testimony." ***McDaniel v. CSX Transp., Inc.***, 955 S.W.2d 257, 263 (Tenn. 1997). ***See Shelby County v. Barden***, 527 S.W.2d 124, 131 (Tenn. 1975); ***Mabon v. Jackson-Madison County Gen. Hosp.***, 968 S.W.2d 826, 829 (Tenn. Ct. App 1997). Accordingly, appellate courts reviewing a trial court's decision regarding the qualifications or competency of a patient's medical expert employ the "abuse of discretion" standard. ***Robinson v. LeCorps***, 83 S.W.3d 718, 725 (Tenn. 2002); ***Seffernick v. Saint Thomas Hosp.***, 969 S.W.2d 391, 393 (Tenn. 1998); ***Roberts v. Bicknell***, 73 S.W.3d 106, 113 (Tenn. Ct. App. 2001). "An abuse of discretion occurs when the trial court reaches a decision against logic that causes harm to the complaining party or when the trial court applies an incorrect legal standard." ***Riley v. Whybrew***, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). The decision of the trial court "will be upheld so long as reasonable minds can disagree as to the propriety of the decision [of the trial court]." ***Id.***

T.C.A. § 29-26-115(a)(1) requires a patient's expert in a medical malpractice case to have knowledge of the standard of professional practice in the community where the defendant physician practices or in a similar community. ***Robinson***, 83 S.W.3d at 724. Although the expert is not required to be familiar with all the medical statistics of the community where the defendant physician practices, ***Ledford v. Moskowitz***, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987), the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. ***Mabon***, 968 S.W.2d at 831. Moreover, this Court has held that a medical expert's "mere ritualistic incantation of statutory buzz words evidences very little." ***Roberts***, 73 S.W.3d at 113 (quoting ***Church v. Perales***, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000)). The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. ***See Spangler v. East Tenn. Baptist Hosp.***, No. E1999-01501-COA-R3-CV, 2000 WL 222543, at *1- 2 (Tenn. Ct. App. Feb. 28, 2000) perm. app. denied (Tenn. Sept. 11, 2000).

For the purpose of T.C.A. § 29-26-115(a), the only relevant "community" is the community in which the defendant physician actually practices or in a similar community. ***Tilley v. Bindra***, No. W2001-01157-COA-R3-CV, 2002 WL 1000196, at *4-5 (Tenn. Ct. App. May 13, 2002) perm. app. denied (Tenn. Nov. 4, 2002). Accordingly, the courts have held that medical experts testifying for a patient in a medical malpractice case may not base their testimony solely on their familiarity with a national standard of professional practice. ***Robinson***, 83 S.W.3d at 724; ***Mabon***, 968 S.W.2d at 831. We have likewise rejected expert testimony based on a state-wide standard of professional practice, ***Totty v. Thompson***, 121 S.W.3d 676, 678-79 (Tenn. Ct. App. 2003); ***Tilley***, 2002 WL 1000196, at *4 (holding that the relevant standard of professional practice is not a nationwide or even a statewide standard of care), as well as testimony premised on a regional standard of professional practice. ***Howell v. Baptist Hosp***., No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 (Tenn. Ct. App. Jan. 14, 2003) perm. app. denied (Tenn. May 27, 2003) (holding that an affiant's assertion of familiarity with the applicable standard of professional practice in "Middle Tennessee" did not provide a basis for testifying regarding the standard of professional practice in Nashville).

Turning to the record in this case, we find the following excerpts from Dr. Phelps's trial testimony to be relevant:

Q. You've never practiced in Memphis, Tennessee?
A. That's correct

***

Q. You don't know how many OB/GYNs are in practice in Memphis, Tennessee?
A. I don't know how many in Memphis. I don't know how many there are in Chattanooga or Houston, so…

Q. You don't know how many maternal-fetal medicine specialists there are in Memphis, Tennessee?
A. Yes I wouldn't know the exact number --

Q. You don't know how many --
A. -- in Chattanooga or Texas.

***

Q. You don't know how many urogynecologists practice in Memphis, Tennessee?
A. The same answer. I mean, I don't know how many urogynecologists are in Chattanooga where I practice, and I don't know how many urogynecologists are in Houston where I practice.

***

Q. Doctor, you don't know how many beds there are at the Methodist Germantown facility, do you?
A. No.

Q. You don't know how many hospitals deliver babies in Memphis, Tennessee, do you?

A. The same -- even in Chattanooga I wouldn't know all the names of the hospitals that deliver babies.

Q. You don't know what medical technology was available to either Dr. Stinson or Dr. Giddens when they were treating and seeing Mrs. Hill in Memphis, Tennessee, do you?

A. I would say -- I mean, C-sections -- there have been C-sections for years. I mean, it's a pretty standard procedure.

Q. But you don't know --

A. Wherever you do it it's pretty much the same.

Q. But you don't know what's available in Memphis, Tennessee? You're assuming that it's the same everywhere else, aren't you, Doctor?

A. Well, you need a knife, and you need an anesthesiologist, or a CRNA. I mean, I don't see how much -- I don't see how a C-section could vary from county to county or state to state.

Q. But the point is, Doctor, you don't know. You don't know anything about the medical community in Memphis, Tennessee, do you?

A. I would say no. I mean, the answer is I would say that I should -- I am familiar with that. I mean, I don't see why the standard here would be different -- I have a license to practice medicine in Tennessee, which does not exclude Memphis, Tennessee. And I can go anywhere in Tennessee and practice medicine. I can go anywhere in Tennessee and do a C-section.

Following this line of questioning, the Patient attempted to clarify Dr. Phelps' testimony concerning his knowledge of the applicable standard of care, but Dr. Phelps' testimony did not indicate that his professional opinion is based upon a community standard, to wit:

Q. Now, as far as not knowing the number of beds or not knowing the number of patients that are seen or the analgesics available or the OB/GYN -- the size of their couch in their waiting room, do you feel that any of that interferes with your ability to evaluate medical files and render an opinion?

A. No. The -- doing a C-section in Chattanooga -- I'm licensed in the whole State of Tennessee. It does not exclude this county. And, you know, I don't see how it would be any different in

Chattanooga versus a C-section being done here.

On appeal, the Patient argues that, although Dr. Phelps did not know the specific answers to the Healthcare Providers' questions, he practices in an area similar to Memphis. This Court has carefully reviewed the appellate record and finds no place in the record where the Patient attempts to prove that either Chattanooga or Houston is a community similar to Memphis. In fact, the only part of the *voir dire* that touches on this element is a line of questioning conducted by defense counsel:

Q. Dr. Phelps, I'm interested in your knowledge of the comparison between Chattanooga and Memphis. You said that you work at an HCA hospital in Chattanooga, is that right?

A. That's correct.

Q. Do you know whether there's an HCA hospital in the Memphis area?

A. I've been told that HCA is all over Tennessee, but I don't know particularly.

***

Q. …You don't know whether or not there is an HCA hospital in the Memphis area?

A. I do not.

Q. Now, HCA is a hospital that is a for-profit enterprise; is it not?

A. That's correct.

Q. Do you know whether Methodist Hospital-Germantown is a for-profit or a non-profit institution?

A. I do not.

***

A. I don't know if there are private non-profit hospitals.

Q. The answer would be that you have not?

-10-

A. Well, I've never heard of such a thing, but if there -- there might be.

Q. Really? Do you know whether or not the Methodist Hospital System is affiliated with the university system in Memphis?

A. I do not know.

Q. All right. Now, do you know whether or not there's a difference in the mechanism of care that's provided to pregnant mothers for non-profit institutions, let's say in the state of Tennessee, and for-profit institutions?

A. It should be the same.

*\*\**

Q. You've never practiced in a non-profit hospital setting in the State of Tennessee, have you?

A. No, not in Tennessee.

Dr. Phelps' answers do not here, nor anywhere else, establish any similarities between the cities. In ***Carpenter v. Klepper***, we stated that "[a] plaintiff who chooses to prove the standard of care in a similar community necessarily must prove that community is similar to the one in which the defendant practices." ***Carpenter v. Klepper***, 205 S.W.3d 474, 483 (Tenn. Ct. App. 2006).

Following Dr. Phelps' testimony, the trial court found that Dr. Phelps was not a competent expert, to wit:

> [The Court] During Mr. McColgan's cross-examination, Dr. Phelps said, 'I don't see why the standard is different for Memphis as to any other place in Tennessee.' And during Mr. Johnson's redirect, 'my lack of knowledge about Memphis doesn't matter, C-sections in Memphis and Chattanooga are the same.'
>
> That leads me to believe that he is poised to discuss a state standard, which is probably a little better than the national standard, but I don't think it meets the requirements of our statute.

From the record before us, we cannot conclude that the trial court abused its discretion in disqualifying Dr. Phelps from testifying as an expert witness in this case.

-11-

Next, the Patient argues that the trial court abused its discretion by hearing the Healthcare Providers' Motions for Summary Judgment on multiple occasions. This Court notes that such procedural matters are within the discretion of the court, and thus the decision of the trial court in matters of practice will not be disturbed "unless plain rules of proceeding are clearly violated." *Dews v. Eastham*, 10 Tenn. 463 (Tenn. Err. & App. 1830).

This case has had a rather prolonged procedural history. Over the course of four years, the trial court heard the Healthcare Providers' Motions for Summary Judgment five times.[7] The Order resulting from the December 3, 2004, hearing ("the January 11, 2005 Order") states that the Healthcare Providers' Motions for Summary Judgment will be granted unless the Patient is able to obtain a competent medical expert by January 5, 2005.

On appeal, the Patient argues that the mere proffering of Dr. Phelps' affidavit within the specified timeframe negated the contingent Order granting summary judgment. We disagree. The court speaks through its Orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Here, the Jan. 11, 2005 Order is a contingent order (*i.e.*, it will not be entered if the Patient is able to "obtain a competent medical expert"). We read this language to require more than a mere proffer. By its plain language, the Order requires the Patient to actually *obtain* a *competent* medical expert. Having found above that the trial court did not err in its conclusion that Dr. Phelps was not a competent medical expert in this case, the Patient did not satisfy the requirements put forth in the Order. Consequently, the trial court could have granted summary judgment at that time, pursuant to its Order. In what we perceive to be an abundance of leniency toward the Patient; however, the trial court extended more time for finding an expert and, as noted above, held a series of hearings to that end. Because it is within the purview of the trial court to determine how it runs its court and because the many delays here only served to help the Patient, we do not find an abuse of discretion in allowing the Healthcare Providers' Motions for Summary Judgment to be pending until it was ultimately granted by the September 1, 2006 Order. Also, because the facts and causes of action in this case have not been amended during the pendency of the litigation, we likewise find that a refiling of the Motions for Summary Judgment was not necessary here.

The Patient also argues that the trial court erred in granting the Motions for Summary Judgment before granting the Patient's Motion for Extension of Time to Name New Expert if Current Expert Unacceptable (filed April 10, 2006). The decision whether or not to grant an extension or continuance likewise rests well within the sound discretion of the trial court. *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966); *Sanjines v. Ortwein & Assocs., P.C.*, 984 S.W.2d 909, 909 (Tenn. 1998). Such a decision will not be overturned on appeal unless such a decision constitutes an abuse of discretion. *See Blake v. Plus Mark, Inc.,* 952 S.W.2d 413, 415 (Tenn. 1997); s*ee also Kenyon v. Handal,* 122 S.W.3d 743, 751 (Tenn. Ct. App. 2003).

---

[7] December 3, 2004; April 6, 2006; June 23, 2006; August 25, 2006; and September 1, 2006

In her reply brief, the Patient argues that she was of the belief that the "trial court would allow a later non-suit or at a minimum, a reasonable amount of time to seek a new expert if required. The trial court never offered its reasoning for granting one week." The record does not support the Patient's allegation. At the June 23, 2006 hearing, the trial court stated in relevant part:

> The Court: …Mr. Johnson, if the Supreme Court declines to accept this case, I will allow it to be put back on my docket with a simple letter of notice. At that point, I'm going to determine whether you do or do not, on that day, have an expert. If you do not have an expert on that day, I'm going to dismiss this case by virtue of the summary judgment. And then, you will have a final judgment. And you can go back up the appellate tree, again. Are we clear?
>
> Mr. Johnson: Yes, Your Honor.
>
> The Court: All right.
>
> Mr. Johnson: May -- am I understanding the Court's ruling, if I don't have an expert on that day --
>
> The Court: That day.
>
> Mr. Johnson: But if I have an expert, I'm solid?
>
> The Court: If you have an expert, then we're probably back where we are, again, to determine whether that expert will be acceptable.
>
> Mr. Johnson: Thank you, Your Honor.

Later in this hearing, the trial court notes that the Patient's Motion "has been solved [*sic*]. That's the time to name the experts." On August 21, 2006, the Tennessee Supreme Court denied the Patient' application for interlocutory appeal, and the Healthcare Providers gave the Patient's counsel a letter noticing their intent to set the Motions for Summary Judgment for hearing. On August 25, 2006, the hearing occurred. The Patient still did not have an expert, and the trial court gave the Patient one more week to submit evidence by affidavit or otherwise to satisfy the statutory requirements.

One week later, on September 1, 2006, the final hearing occurred and the Patient presented the trial court with an affidavit from Elliott Oppenheim, J.D., M.D., LL.M, a medical-legal consultant. This affidavit provided no expert opinions regarding the Patient's case, but

-13-

rather stated that a suitable expert could not be obtained "any earlier than September 15, 2006." At this point, the trial court granted the Healthcare Providers' Motions for Summary Judgment.

This Court finds that the trial court was more than lenient in giving the Patient multiple opportunities to qualify an expert. We note that the Patient had almost five months to submit a new expert affidavit from the time she filed her Motion for Extension of Time to Name New Expert until the trial court's final decision. In short, the trial court did consider the Patient's Motion. Furthermore, and especially in light of the fact that the Patient was granted opportunity after opportunity to satisfy the expert requirement, we find that there was no error in the trial court's decision.

We now turn to the question of whether summary judgment was properly granted. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* **Tenn. R. Civ. P. 56.04**. The moving party for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id*. In *Byrd v. Hall*, our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993)(citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

In a medical malpractice action, expert testimony is required by statute to prove the standard of care and deviation from the standard of care. *See* **Tenn. Code Ann. § 29-25-115**; *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229 (Tenn. 1998). Therefore, to defeat summary

judgment in such an action, the non-moving party must produce competent expert opinion, by affidavit, supporting his claim of malpractice. ***Bowman****,* 547 S.W.2d at 530.

As discussed above, the trial court did not err in finding that Dr. Phelps was not competent to testify as an expert pursuant to the "locality rule." In the instant case, the Healthcare Providers filed Motions for Summary Judgment supported by Dr. Giddens' and Dr. Stinson's Affidavits stating that their actions conformed with the applicable standard of care. The burden then shifted to the Patient to respond with an expert affidavit sufficient to refute Dr. Giddens' and Dr. Stinson's Affidavits, thus creating a dispute of material fact. In the absence of this responsive proof, our Supreme Court has held that summary judgment is proper, to wit:

> ...in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.

***Bowman****,* 547 S.W.2d at 531.

Aside from Dr. Phelps' Affidavit, the Patient has presented no other affidavit or documentation evidencing expert proof supporting her claim of malpractice. As such, there are no genuine issues of material fact disputed in this case, and summary judgment was properly awarded in favor of the Healthcare Providers.

The Patient raises one final issue of whether the trial court erred in granting summary judgment when the Patient had a notice of voluntary nonsuit pending.[9]

Rule 41.01(1), Tenn. R. Civ. P. states:

> Subject to the provisions of Rule 23.05, Rule 23.06 or Rule 66 or of any statute, and except when a motion for summary judgment made by an adverse party is pending, the plaintiff shall have the right to take a voluntary Nonsuit to dismiss an action without prejudice…

In its discretion, the trial court can permit a voluntary dismissal, notwithstanding the pendency of a motion for summary judgment. ***Stewart v. Univ. of Tenn****.*, 519 S.W.2d 591, 593 (Tenn. 1974). The Patient argues that the trial court should have granted the nonsuit absent some showing of legal prejudice. We have already held that the trial court did not abuse its discretion in treating the Healthcare Providers' Motions for Summary Judgment as pending. At the time

---

[9] We note that the voluntary nonsuit was filed on the same day the trial court granted the Motions for Summary Judgment.

the trial court granted the Motions for Summary Judgment, the case was over four years old. In its Final Order of September 26, 2007, the trial court stated that:

> The Court considered the Notice [of Voluntary Dismissal] to have been submitted after the Court had already ruled [granting the Healthcare Providers' Motions for Summary Judgment]. The Court still maintains that view, but also specifically finds that under the circumstances of this case, where the Court had already provided Plaintiffs with ample opportunity to develop expert testimony sufficient to take the case to trial, it was not appropriate to consider a voluntary dismissal at such a late date in the proceedings, even if the Notice had been presented before the Court ruled on the Motions.

The Patient was permitted to apply for interlocutory appeal at this Court's and the Supreme Court's level, and had numerous opportunities to retain a competent expert. It appears to this Court that the Patient's filing of her Notice of Voluntary Dismissal was merely a final effort to avoid an impending adverse result. We find no abuse of discretion in the trial court's decision.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against Appellants, Heather and LaQuinn Hill, individually, and as next friend of Cameron Hill, and their surety.

_____
W. FRANK CRAWFORD, JUDGE