# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 3, 2010 Session

## ALVIN FLATT, ATTORNEY IN FACT and NEXT OF KIN OF DECEDENT FALNETTA NOBLE, v. CLAIBORNE COUNTY HOSPITAL AND NURSING HOME

**Appeal from the Circuit Court for Claiborne County**
**No. 9630      Hon. Walter C. Kurtz, Senior Judge**

---

**No. E2009-01341-COA-R3-CV  - FILED APRIL 8, 2010**

---

In this medical malpractice action, the plaintiff offered evidence of the standard of care required of defendant by an expert witness, and defendant offered evidence that it complied with the standard of care by an expert witness, who was accepted as an expert by the Trial Court. The Trial Judge ruled in favor of defendant, essentially accepting the defendant's evidence that it had met the standard of care for the deceased. Plaintiff appealed, insisting that the Trial Court did not "correctly weigh the conflicting expert testimony" in its ruling for the defendant. On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Paul E. Kaufman and Janie Kaufman, Knoxville, Tennessee, for the appellant, Alvin Flatt.

Jimmie E. Miller, Kingsport, Tennessee, for the appellee, Claiborne County Hospital and Nursing Home.

# OPINION

## Background

Plaintiff Falnetta Nobel, brought this action against defendant, Claiborne County Hospital and Nursing Home (Claiborne County Hospital or Hospital) seeking damages against defendants for injuries Ms. Noble suffered from a fall at the Hospital on December 9, 2005. Ms. Noble died some time after the suit was filed and Alvin Flatt, Ms. Nobel's son, was substituted for plaintiff as attorney in fact and next of kin.

The matter was heard before Judge Walter C. Kurtz on April 30, 2009. Plaintiff presented expert testimony on the nursing standard of care regarding falls prevention in a hospital from Rhonda Morgan, R.N. Ms. Morgan is a nurse and hospital administrator in Kingsport, Tennessee, a much larger city than Tazwell, Tennessee where the Hospital is located. After presenting her credentials, plaintiff tendered her as an expert and counsel for defendant stipulated that Ms. Morgan was familiar with the standard of care in Claiborne County. On the other hand, when defendant tendered its nurse expert witness, Jeannette Boles, R.N., plaintiff objected and moved to disqualify her pursuant to the locality rule found in Tenn. Code Ann. § 29-26-115. Plaintiff argued that because the hospital Ms. Boles worked at was much larger and offered many more services than defendant Hospital and that the city where she worked was much larger than Tazwell, she was not qualified to offer an expert opinion regarding the standard of care in Claiborne County. The Trial Court agreed and granted plaintiff's motion.[1] Defendant then sought to qualify Candice Johnson, R. N. as an expert witness. Ms. Johnson had already testified as to her assessment and care of Mrs. Noble during the hospitalization at issue. Plaintiff objected to Ms. Johnson expressing expert opinions because she had not been designated in a timely manner pursuant to a scheduling order deadline to designate experts. The Trial Court overruled plaintiff's objection and accepted Ms. Johnson as an expert witness.

Appellant is not contesting the Trial Court's decision to permit Ms. Johnson to testify as an expert witness, despite the scheduling order, and the hospital did not appeal the Trial Court's granting plaintiff's motion to disqualify Ms. Boles.

---

[1] Ms. Boles had been designated as the defendant's Rule 26 expert witness and had been deposed by plaintiff well before trial. Plaintiff never objected to her qualifications, however, until more than halfway through the trial. Although defendant objected to being blind sided in this manner, the Trial Court stated that he had to grant plaintiff's motion to disqualify Ms. Boles under the locality rule because there was no pre-trial order stating that any objections to the experts had to be made prior to trial, as is customary in many jurisdictions.

Final Judgment was entered on May 26, 2009 in favor of the Hospital upon a finding by the Trial Court that "plaintiff had failed to carry his burden of proof relative to the issue of a deviation from the standard of care." The Trial Court made the following findings of fact and conclusions of law in the oral memorandum opinion:

1.      The case is governed by Tenn. Code Ann. § 29-26-115 which provides that the plaintiff has the burden of proof and must prove the recognized standard of care and that the defendant's actions were not within the standard of care. Further, plaintiff must show that defendant's deviation of the standard of care was the proximate cause of plaintiff's injuries which would not have occurred otherwise.

2.      The standard of care must be established by expert testimony. While the Hospital's policies and procedures are helpful to the Court they do not supplant the testimony of the expert on what is the standard of care.

3.      The Trial Court noted, based on a jury instruction, that in assessing the expert opinions the Court did not have to accept all expert testimony.

4.      The Trial Court stated that plaintiff's expert was knowledgeable but, like all experts, she had the benefit of hind sight.

5.      The Court found that Ms. Johnson, the nurse who cared for plaintiff at the time of the fall and who was presented as an expert by the defense, assessed Ms Nobel as being at high risk for falls. The Court also found that Ms. Johnson considered that Ms. Nobel had no history of falls and that she was alert and that based on these factors the nurse's decision to not use a bed alarm or four bed rails was reasonable and within the standard of care. The Court also found, based on Ms. Johnson's testimony that it was the standard of care to use the least restrictive procedures possible that would still ensure a patient's safety. The Court found that it was not necessarily within the standard of care to use all four bed rails and a bed alarm for a patient who was categorized as being high risk for falls if there was no history of falls and if the patient were alert. The Court concluded that the Ms. Johnson complied with the standard of care and that judgement was for the defense.

The issue on appeal is:

Did the Trial Court correctly weigh conflicting expert testimony when it

-3-

entered judgment in favor of the defendant?

A trial court's findings of fact in a non-jury case are reviewed *de novo* upon the record. The Trial Court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). Trial Courts are granted broad discretion when determining the "admissibility, qualifications, relevancy, and competency of expert testimony." *Geesling v. Livingston Regional Hosp., LLC,* No. M2007-02726-COA-R3-CV, 2008 WL 5272476 at * 2 (Tenn. Ct. App. Dec. 18, 2008)(citing *McDaniel v. CSX Transp., Inc*., 955 S.W.2d 257, 263 (Tenn.1997)).

Our review of the Trial Court's decision regarding expert witness' competency and qualifications is under an abuse of discretion standard. *Geesling* at * 2 (citing *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn.2002); *Taylor v. Jackson-Madison County Gen. Hosp. Dist*., 231 S.W.3d 361, 371 (Tenn .Ct. App.2006)). Our Supreme Court has defined an abuse of discretion as "an erroneous conclusion or judgment on the part of the trial court--a conclusion that was clearly against logic (or reason) and not justified." *Foster v. Amcon Int'l, Inc.,* 621 S.W.2d 142, 145 (Tenn.1981)(citing *Carpenter v. Klepper* 205 S.W.3d 474, 477 (Tenn.Ct.App.2006)). A trial court's decision will be upheld so long as reasonable minds can disagree as to the propriety of the trial court's decision. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001) (citing *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn.1999)).

The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005).

In order to recover in a malpractice action, a plaintiff must prove:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary or reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not have otherwise occurred.

Tenn.Code Ann. §29-26-115; *see also Payne v. Caldwell,* 796 S.W.2d 142, 143 (Tenn.1990).

This Court explained the plaintiff's burden of proof under Tenn.Code Ann. §29-26-115 in *Richardson v. Miller*, 44 S.W.3d 1, 15 -16 (Tenn. Ct. App.,2000).

> A plaintiff's burden of proof in a medical malpractice case is governed by statute. As a general matter, the law will not presume that a health care provider acted negligently simply because a treatment was unsuccessful. *See* Tenn.Code Ann. § 29-26-115(c) (1980); *Roddy v. Volunteer Med. Clinic, Inc.,* 926 S.W.2d 572, 578 (Tenn.Ct.App.1996). Thus, in order to make out a prima facie case of medical negligence, a plaintiff must come forward with evidence that complies with Tenn.Code Ann. § 29-26-115(a). This statute requires the conduct of health care providers to be judged by an objective community standard. Accordingly, Tenn.Code Ann. § 29-26-115(a)(1) requires the plaintiff to present evidence of "[t]he recognized standard of acceptable professional practice in the profession and the specialty thereof ... that the defendant practices in the community in which he [or she] practices ... at the time the alleged injury or wrongful action occurred." Establishing this professional standard of care requires expert testimony. *See Moon v. St. Thomas Hosp.,* 983 S.W.2d 225, 229 (Tenn.1998); *Cardwell v. Bechtol,* 724 S.W.2d 739, 742 (Tenn.1987); *Jennings v. Case,* 10 S.W.3d 625, 627 (Tenn.Ct.App.1999).

*Richardson v. Miller* at 15 - 16.

Expert testimony as to the standard of care in the community cannot be replaced with the production of internal hospital policy and procedure on their own. *Geesling*, No. M2007-02726-COA-R3-CV, 2008 WL 5272476 at * 6 (citing *Richardson v. Miller*, 44 at 25).

The issue on appeal is whether the Trial Court's finding that Ms. Johnson's testimony regarding the standard of care for patients at risk for falls was the applicable standard of care in December 2005. Appellant contends that the Trial Court incorrectly weighed the evidence regarding the standard of care. It is well established that "[t]he weight of the theories and the resolution of legitimate but competing expert opinions are matters entrusted to the trier of fact." *Parker v. Henderson County*, No. W2009-00975-COA-R3-CV, 2010 WL 377044 at * 7 (Tenn. Ct. App. Feb. 4, 2010)(citing *Brown v. Crown Equip. Corp.,* 181 S.W.3d 268, 275 (Tenn.2005); *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 265 (Tenn.1997)). Where an expert witness's testimony is supported by the evidence and the trier of fact credits that testimony over others, there is no basis to reverse the court's findings. *Parker* at *7(citing *Estate of Fetterman v. King,* 206 S.W.3d 436, 445 (Tenn. Ct. App.2006) (quoting *Atkins v. State,* No. E2003-01255-COA-R3-CV, 2004 WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004)).

Appellant contends that the Trial Court erred when it based its judgment on the standard of care testimony of Ms. Johnson rather than that of Ms. Morgan because of the following: (1) Ms. Morgan is more experienced than Ms. Johnson; (2) Ms. Morgan is more educated than Ms. Johnson and (3) there was little evidence that Ms. Johnson knew the standard of care for patients at risk of falling prior to December 8, 2005.

The crux of Ms. Morgan's testimony on the standard of care that differed from Ms. Johnson's testimony regarding the standard of care was her opinion that once Mrs. Noble was classified as at risk for falls by Ms. Johnson, a bed alarm should have been put in place and the lower right and left bed rails should have been put in the upright position along with the upper rails that Ms. Johnson did employ. Ms. Morgan based most of her testimony on the falls prevention policy of the Hospital, and relied on all three pages of Exhibit 3 even though the first two pages clearly indicated that they were the subject of revisions in 2006 and 2007. Ms. Johnson, who actually worked at the Hospital, testified that only the third page of Exhibit 3 was effective at the time Mrs. Noble fell. Page 3 of Exhibit 3 does not require or even mention the use of a bed alarm for an at risk patient. Page 3 does require the use of "protective rails . . . at bedtime and after the use of certain drugs" but the policy does not provide specifically the use of four bed rails.

The Trial Court indicated that it was not convinced that Ms. Morgan's reliance on the first two pages of Exhibit 3 in forming her opinion on the standard of care was correct. However, the Trial Court stated that even if it accepted Ms. Morgan's position that the first two pages of Exhibit 3 were in effect in 2005, it did not find that the policy mandated the use of rails and alarms when a patient was found to be at risk for falls. Further the evidence showed that the hospital where Ms. Morgan worked for many years as nurse, educator and administrator did not require the use of a bed alarm or lower bed rails when a patient was identified as at risk of falls in December 2005. In fact, the hospital's policy specifically called for the use of the two upper bed rails, and the Trial Court correctly found that the type of policies and procedures relied on by Ms. Morgan were admissible but only to augment the testimony of an expert. Here, the Hospital's falls procedures relied on by Ms. Morgan did not support or augment her expert opinion that Ms. Johnson was required to use a bed alarm and the lower side rails. Based on the evidence, the Trial Court did not err when it rejected Ms. Morgan's expert testimony that the standard of care required the use of the lower side rails and a bed alarm for a patient such as Mrs. Noble.

Morgan's own testimony also undermined her expert opinion that a bed alarm and lower side rails were required. She conceded that (a) the use of all four bed rails is a form of restraint and that when nurses decide to restrain a patient they must use the least restraint possible and that Mrs. Noble did not need to be restrained; (b) when all four bed rails are employed, a patient can get hung up by the rails and injured; (c) that Mrs. Noble was assessed

several times to be alert and oriented by Ms. Johnson; (d) Mr. Flatt stated that his mother was alert that evening; (e) that Mrs. Noble had demonstrated several times that evening that she could use the call button; (f) that Mrs. Noble had asked for help to get out of bed several times that evening; and (g) the nurse at the bedside is better able to assess the patient than someone like herself who merely reads the chart.

Ms. Johnson was never specifically asked at trial to articulate her opinion about what the standard of care was for a patient who had been assessed to be at risk for falls. She did testify, however, as to the interventions she took once she had classified Mrs. Noble as at risk for falls and she clearly testified that she had met the standard of care with her actions. Thus, the Trial Court could infer that her opinion regarding the standard of care was the actions that she took. The interventions she instituted were based on her assessment of both Mrs. Noble's physical and mental condition. Ms. Johnson assessed Mrs. Noble's mental condition and found her alert, oriented and not confused. Based on this assessment she instructed Mrs. Noble to use her call button to ask for help to get out of bed, and Mrs. Noble, in fact, called for help several times during the evening at issue. Ms. Johnson made sure the call button was within Mrs. Noble's reach and because Mrs. Noble was receiving medication that could have a sedative effect, Ms. Johnson raised the right and left upper bed rails, as required by the Hospital's fall prevention policy. Ms. Johnson testified that it was the standard of care to use the least restrictive procedures possible that would still ensure a patient's safety, thus she used only the upper bed rails. Ms. Johnson acknowledged that the Hospital had bed alarms available for use if needed. However, she testified that in December 2005, bed alarms were reserved for patients who were confused and had attempted to get out of bed without assistance. Ms. Johnson noted that once the fall occurred, Mrs. Noble then had a history of transient confusion and falling while trying to get out of bed alone and that at that point a bed alarm was employed and all four bed rails were put in the upright position.

The Trial Court, in response to Ms. Johnson's testimony and the testimony of Ms. Morgan held that "I think her [Ms. Johnson's] decision after her assessment was reasonable and it was within the standard of care. I don't find that categorizing somebody as high risk always requires bed rails and alarms. It depends on the factors Ms. Johnson considered. Now, the results here may well have been different if Ms. Noble was confused or had a history of falls, but I think that Ms. Johnson complied with the standard of care and the judgment is for the defense."

Ms. Johnson's testimony was supported by the evidence and the Trial Judge, as the trier of fact, clearly gave credit to her testimony over that of Ms. Morgan as to the standard of care regarding alarms and bed rails. We therefore affirm the Judgment of the Trial Court. *See Parker v. Henderson County* at * 7 (citing *Estate of Fetterman v. King,* 206 S.W.3d 436, 445 (Tenn. Ct. App.2006) (quoting *Atkins v. State,* No. E2003-01255-COA-R3-CV, 2004

WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004)).

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to Alvin Flatt.

_____
HERSCHEL PICKENS FRANKS, P.J.